2001 SD 23

**Lyle WIEDMANN, Claimant
and Appellant,**

v.

**MERILLAT INDUSTRIES,
Employer/Self–Insurer
and Appellee.**

**No. 21477.**

Supreme Court of South Dakota.

Considered on Briefs on Jan. 8, 2001.

Decided Feb. 28, 2001.

Margo Tschetter Julius of Groves, Julius & Simpson, Rapid City, SD, Attorneys for claimant and appellant.

Curtis S. Jensen and Frank Driscoll of DeMersseman Jensen, Rapid City, SD, Attorneys for employer/self-insurer and appellee.

GILBERTSON, Justice.

[¶ 1.] Lyle Wiedmann (Wiedmann) injured his back while working for Merillat Industries (Merillat). Wiedmann's petition for odd-lot benefits was denied. The circuit court affirmed the Department of Labor's denial because Wiedmann had refused to participate in a pain management program. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] Wiedmann began working for Merillat in June of 1987. He injured his back while working on March 21, 1994, and

reported the injury to his supervisor. For the first month after the injury, Wiedmann continued to work his usual twelve-hour shifts, despite continued complaints of pain. At this time, Wiedmann was receiving treatment from Dr. Burns, a chiropractor. Subsequently, on the advice of Dr. Burns, beginning in April of 1994, Wiedmann did not work for approximately one year. Dr. Burns also referred Wiedmann to a neurologist, Dr. Sabow. After an MRI was performed, it was discovered that Wiedmann had a slightly bulged disc.[1] Dr. Sabow recommended treatment, rather than surgery, for his injury. Because Wiedmann insisted that he needed surgery, Dr. Sabow referred him to Dr. Teuber, a neurosurgeon. Dr. Teuber agreed with Dr. Sabow that surgery was not an option.

[¶ 3.] In an attempt to return Wiedmann to work, in February of 1995 Merillat requested Dr. Sabow to review possible job descriptions for Wiedmann. Wiedmann eventually returned to Merillat in a position with the quality control department, working a four-hour shift. This arrangement continued until May of 1995 when Dr. Sabow again took Wiedmann off work because of continued complaints of back pain. Wiedmann then sought treatment with Dr. Tschida and Dr. Goff. Neither doctor could identify the source of Wiedmann's pain. Dr. Sabow then referred Wiedmann to another neurosurgeon, Dr. Seljeskog. On October 17, 1995, Dr. Seljeskog performed a microdiscectomy to relieve the pressure on a nerve root caused by a small disk rupture. This procedure reduced Wiedmann's pain, and he returned to work on March 1, 1996.

[¶ 4.] Before he returned to work, Merillat prepared four written job descriptions, with accompanying video of employees performing the actual job. These four positions were approved by Dr. Sabow as within the restrictions recommended by Dr. Seljeskog. After one week of full time work, Wiedmann returned to Dr. Sabow, complaining of back pain. Dr. Sabow recommended a "work hardening" program, where Wiedmann would start working four hours per day, gradually increasing the hours until he worked a full shift. Wiedmann was unable to fulfill this schedule, as he could only work six hours a day before leaving due to back pain.

[¶ 5.] On May 20, 1996, Wiedmann again saw Dr. Sabow. Dr. Sabow was unable to determine why Wiedmann could not follow the work hardening schedule, and he could offer no further treatment to alleviate Wiedmann's pain. At this point, Dr. Sabow recommended that Wiedmann attend a pain management program. Merillat did not authorize that program because Wiedmann had been making progress towards working longer hours. Eventually, Merillat and Wiedmann agreed on a set schedule of six and a half-hour shifts. Wiedmann followed this schedule for three months, even asking his manager if more shifts were available. In December of 1996, a new "work hardening" schedule was prepared which would gradually increase the number of hours worked until Wiedmann was able to work a standard twelve-hour shift. While initially receptive to this schedule, Wiedmann actually decreased the number of hours he had been working after this schedule went into effect.

[¶ 6.] Wiedmann was evaluated by a psychologist, Dr. Ertz, on August 16, 1996 and February 19, 1997. During these evaluations, Dr. Ertz administered the MMPI 2 test,[2] which suggested "a relative-

---

1. This condition is commonly seen in the general population without causing pain.

2. The following quote from *Johnson v. Albertson's*, 2000 SD 47, ¶ 14 n.6, 610 N.W.2d 449, 452 n.6, explains the MMPI test:
     MMPI stands for Minnesota Multi Phasic Personality Inventory. The test is a standard objective psychological battery consisting of 550–566 true-false questions concerning behavior, feelings, social attitudes, and frank symptoms of psychopathology. To each question, the subject must answer true, false or cannot say. The subject's answer sheet is then scored by various keys

ly significant level of depression." Dr. Ertz also determined that the level of Wiedmann's depression was directly linked to the amount of pain he was suffering, which in turn, was linked to the number of hours he worked.[3]  In addition, Dr. Ertz concluded that Wiedmann had a tendency to be compliant and to hide or minimize expressions of pain.  According to Dr. Ertz, these tendencies drove Wiedmann to work more hours, which consequently caused more depression.  Wiedmann was cautioned by Dr. Ertz to only work within his pain tolerances.[4]

[¶ 7.]  On January 28, 1997, Wiedmann again visited Dr. Seljeskog, complaining of back pain.  After another MRI was performed, Dr. Seljeskog could not find the source of Wiedmann's pain.  Merillat then scheduled Wiedmann for a pain management program.  This program included an evaluation by a psychologist, and was designed to teach patients to deal with the pain they were feeling.  Dr. Ertz had concerns that the pain management program would conflict with Wiedmann's personality style and cause him further depression.  After consulting with his attorney and Dr. Ertz, Wiedmann decided not to attend the evaluation.

[¶ 8.]  While still working for Merillat,[5] Wiedmann petitioned the Department of Labor (DOL) for an award of permanent total disability benefits under the odd-lot doctrine.  After a hearing on April 10–11, 1997, the DOL concluded that Wiedmann's claims of debilitating pain were not credible.  In spite of this lack of credibility, the DOL awarded benefits because Merillat had not presented any expert testimony to refute Wiedmann's claim that he was too depressed to work full-time.  On appeal to the circuit court, the award was reversed and remanded with directions to enter findings of fact and conclusions of law on whether Wiedmann's pain prevented him from working and whether his refusal to attend the pain management program precluded an award of benefits.

[¶ 9.]  On remand, the DOL again found that Wiedmann lacked credibility.  It further rejected the opinions of Wiedmann's experts because they were based on Wiedmann's noncredible complaints of pain.  Finally, the DOL found that Wiedmann could not establish he was permanently disabled due to debilitating pain while refusing to participate in a pain management program.  For those reasons, it denied benefits.  That decision was affirmed by the circuit court on the sole ground that Wiedmann's refusal to participate in the program was sufficient to deny benefits.  Wiedmann appealed to this Court raising the following issues for our consideration:

1.  Whether the DOL was clearly erroneous in finding Wiedmann not credible.

2.  Whether the DOL was clearly erroneous in rejecting the opinions of Wiedmann's experts.

3.  Whether Wiedmann's failure to participate in a pain management program precludes the recovery of benefits.

### STANDARD OF REVIEW

[¶ 10.]  Pursuant to SDCL 1–26–36, our standard of review requires us to give great deference to the DOL on factual questions.  *Johnson*, 2000 SD 47, ¶ 19, 610 N.W.2d at 453 (citing *Sopko v. C & R*

---

that have been standardized on different diagnostic groups and personality types. Sloane Dorland Annotated Medical–Legal Dictionary 717 (1987); Psychiatric Dictionary 640 (5th ed.1981).

3.  Wiedmann was evaluated by Dr. Lynn Meiners on August 27, 1996.  She also concluded that Wiedmann's depression increased in proportion to the number of hours he worked.

4.  In mid-March, 1997, after being treated by Dr. Ertz, Wiedmann began leaving work after only four hours.

5.  Wiedmann eventually quit working for Merillat in February of 1998.

*Transfer Co., Inc.*, 1998 SD 8, ¶ 6, 575 N.W.2d 225, 228) (additional citations omitted). Determinations of lay and expert witness credibility are factual questions reviewed under the clearly erroneous standard of review. *Id.* ¶ 36, 610 N.W.2d at 457. *See also Goebel v. Warner Transp.*, 2000 SD 79, ¶ 39, 612 N.W.2d 18, 28. Under the clearly erroneous standard, we will reverse only "if after a review of the entire record we are definitely and firmly convinced a mistake has been committed...." *Johnson*, 2000 SD 47, ¶ 19, 610 N.W.2d at 453. The DOL's conclusions of law are reviewed de novo. *Id.*

## ANALYSIS AND DECISION

**[¶ 11.] 1. Whether the DOL was clearly erroneous in finding Wiedmann not credible.**

■ [¶ 12.] The DOL specifically rejected the testimony of Wiedmann as not credible. It found that while Wiedmann may experience some pain, he had demonstrated the ability to work despite that pain. Therefore, he had failed to establish a prima facie case for odd-lot benefits because his pain was not "severe and debilitating." *See Baker v. Dakota Min. & Const.*, 529 N.W.2d 583, 585 (S.D.1995). Wiedmann claims this finding was clearly erroneous. We disagree.

■ [¶ 13.] There is no question that Wiedmann suffered from back pain. There is also no dispute that he has suffered from depression as a result of that pain. However, to establish benefits under the odd-lot doctrine, Wiedmann must establish that he is in "severe and debilitating pain." It is *that* claim which the DOL found to lack credibility. Wiedmann's treating physicians released him to work and testified that a return to work was safe and would not risk re-injury. Dr. Sabow testified that one of the best ways to treat chronic pain is to work, keep busy. Dr. Sabow further testified that Wiedmann's pain response was "disproportionate" to the neurological evidence, and that

Wiedmann demonstrated "a hypochondriac attitude."

[¶ 14.] The DOL heard evidence that Wiedmann was able to maintain steady employment, albeit at reduced hours. His supervisor testified that he never noticed any signs of pain while Wiedmann was at work. An ergonomic consultant hired by Merillat observed that Wiedmann displayed no overt pain behaviors while working. Wiedmann was also observed by an occupational rehabilitation specialist to insure that the job was within the safety limits prescribed by Wiedmann's various physicians so as to not cause further injury. The DOL also viewed a video of Wiedmann on the job, where he was moving freely, easily and comfortably. By his own behavior, Wiedmann showed that he was able to work six and a half-hour shifts and had requested additional shifts. Additionally, Wiedmann offered no testimony corroborating his claims of debilitating pain.

[¶ 15.] It is well settled that "[d]ue regard shall be given to the opportunity of the agency to judge the credibility of the witness." *Belhassen v. John Morrell & Co.*, 2000 SD 82, ¶ 17, 613 N.W.2d 531, 536. Wiedmann appeared before the DOL on two occasions. Both times, it determined that his claims of debilitating pain were not credible. After reviewing the record, the DOL's findings of fact were not clearly erroneous.

**[¶ 16.] 2. Whether the DOL was clearly erroneous in rejecting the opinions of Wiedmann's experts.**

■ [¶ 17.] The DOL rejected the expert testimony of Drs. Ertz and Meiners because their opinions were based on Wiedmann's subjective complaints of pain, which had previously been rejected as lacking credibility. We have often stated that "[t]he trier of fact is free to accept all of, part of, or none of, an expert's opinion." *Johnson*, 2000 SD 47, ¶ 26, 610 N.W.2d at 455 (citing *Kester v. Colonial Manor of Custer*, 1997 SD 127, ¶ 24, 571 N.W.2d 376, 380). In addition, "[t]he value of the opinion of an expert witness is no better than

**48**

the facts upon which it is based. It cannot rise above its foundation and proves nothing if its factual basis is not true." *Id.* ¶ 25. Despite these broad powers vested in the finder of fact, Wiedmann claims that the DOL's decision "arbitrarily reject[ed]" the "uncontroverted" opinions of Drs. Ertz and Meiners, and was therefore clearly erroneous.

[¶ 18.] As was pointed out above, there is no question that Wiedmann suffered from back pain and depression. The question for the DOL was whether these symptoms rose to the level of severe and debilitating pain that precluded Wiedmann from full-time employment. Drs. Ertz and Meiners each testified that in their opinion, Wiedmann could not work full-time because of his pain and depression. Contrary to Wiedmann's claim, these opinions were not "uncontroverted." The physicians that examined Wiedmann testified that his pain complaints were excessive when compared to his injury. In addition, Dr. Sabow testified that "[Wiedmann] has some disability, but he's not totally disabled so he can't perform in the competitive job market." Furthermore, both Dr. Sabow and Dr. Seljeskog testified that Wiedmann could return to his job. Dr. Sabow could not understand why Wiedmann could not follow the various "work hardening" programs as established. Finally, the expert opinions of Drs. Ertz and Meiners were refuted by Wiedmann's conduct of repeatedly returning to work. Clearly, the opinions of Drs. Ertz and Meiners were not uncontroverted. Therefore, the DOL was free to accept "all of, part of, or none of" their opinions. *See id.* ¶ 26.

[¶ 19.] The opinions offered by Drs. Ertz and Meiners were based largely on Wiedmann's subjective complaints. These complaints were found to be not credible. It should also be noted that neither expert observed Wiedmann at work. Finally, after receiving treatment from Dr. Ertz, Wiedmann began reducing the number of hours he worked, in spite of the "work hardening" schedule that had recently been established to increase the number of hours worked. Therefore, the DOL was not clearly erroneous in finding the opinions of Drs. Ertz and Meiners lack foundation and prove nothing. *See id.* ¶ 25.

[¶ 20.] **3. Whether Wiedmann's failure to participate in a pain management program precludes the recovery of benefits.**

[¶ 21.] The DOL determined that Wiedmann could not "claim to be totally disabled due to severe and debilitating pain and refuse to participate in the only medical program designed to address his condition." The circuit court affirmed the DOL's decision on this basis alone. Wiedmann argues that based on his experts' opinions, he had the right to refuse to participate in the program. We do not agree.

[¶ 22.] In *Schlenker v. Boyd's Drug Mart*, 458 N.W.2d 368, 371 (S.D. 1990), we stated that if a claimant unreasonably refuses to participate in a pain management program, he or she has failed to prove total disability. Thus, "[t]he question of whether refusal of treatment should be a bar to compensation turns on a determination of whether the refusal is reasonable." *Id.* (citing 1 Larson's Workmen's Compensation Law § 13.22(b)). Our inquiry into the reasonableness of Wiedmann's refusal requires us to weigh "the probability of the treatment's successfully reducing the disability by a significant amount, against the risk of the treatment to the claimant." *Id.*

[¶ 23.] In *Schlenker*, we determined that the claimant's refusal of treatment was reasonable. In that case, only vocational rehabilitation specialists retained by the employer/insurer recommended the treatment. *Id.* at 372. The treatment required the claimant to be away from her family for a four-week period. In addition, her treating physician told the claimant that the program would not be productive for her because these programs are more

suitable for patients "with a high level of anxiety and the functional problems" rather than the pain problems that she suffered. *Id.* at 370 n3.

[¶ 24.] In this present situation, the treatment program was held near Wiedmann's home. The treatment program was recommended by Drs. Sabow, Seljeskog, Tschida and Goff, all doctors that had personally treated Wiedmann. The program was designed to teach patients to manage chronic pain and reduce anxiety caused by the pain. This is the type of program recommended by his physicians, including Dr. Ertz who, after his initial consultation with Wiedmann, recommended he would benefit from therapy "to help him reevaluate stress issues and develop alternative coping skills." Dr. Ertz was not familiar with the treatment program for which Wiedmann was signed up, but testified that it was speculative whether the treatment would improve Wiedmann's ability to cope with his pain.[6]

[¶ 25.] This expert opinion was rejected by the DOL because it was based on Wiedmann's noncredible claims of pain. In spite of all the recommendations from treating doctors, after consulting with his attorney and Dr. Ertz, Wiedmann refused the treatment program. Because Wiedmann depended on expert opinion that had no factual foundation, his refusal to participate in the program was unreasonable. Wiedmann's reliance on advice of counsel is likewise unreasonable. Therefore, under *Schlenker*, he has failed to establish a prima facie case for odd-lot benefits. A claimant cannot claim to be permanently and totally disabled because of debilitating pain and then refuse to participate in the only medical program designed to address his condition.

[¶ 26.] Judgment is affirmed.

6. There was no way to evaluate the effectiveness of the program because Wiedmann re-

[¶ 27.] MILLER, Chief Justice, and SABERS, AMUNDSON, and KONENKAMP, Justices, concur.