2002 SD 58

**In the Matter of the Medical License of Dr. Reuben SETLIFF, M.D.**

**Nos. 21966, 21982.**

Supreme Court of South Dakota.

Argued on Nov. 14, 2001.

Decided May 15, 2002.

Mr. Neil Fulton, Mr. Brent Wilbur of May, Adam, Gerdes and Thompson, Pierre, South Dakota, Attorneys for appellant, SD Board of Medical and Osteopathic Examiners.

Mr. Jeffrey G. Hurd, Mr. Michael A. Hauck of Bangs, McCullen, Butler, Foye & Simmons, Rapid City, South Dakota, Attorney for appellee, Setliff.

AMUNDSON, Justice.

[¶ 1.] The South Dakota Board of Medical and Osteopathic Examiners (Board) appeals regarding Dr. Reuben Setliff's (Setliff) medical license. The Board's decision to revoke Setliff's license was reversed by the circuit court. We affirm.

## FACTS

[¶ 2.] In 1999, Setliff testified in a malpractice action involving a Brookings physician, Dr. Robert Rietz.[1] In preparation for trial, Setliff was deposed regarding a review of his practice while he was employed at the Memorial Hospital of Sheridan County in Sheridan, Wyoming. He acknowledged that his practice had been reviewed, and as a result, he was required to obtain a second opinion prior to performing pediatric microantrostomy,[2] but he denied the characterization as a "restriction" on his privileges.

[¶ 3.] The parties disagree as to whether the review was performed as a result of a complaint, or sua sponte by the hospital. Setliff acknowledged, however, that a letter from another physician concerning the treatment of the physician's son may have prompted the hospital to look into his practice, but testified that the review was not based on this complaint. Following the hospital's review, Setliff was ordered to obtain a second opinion from a board-certified otolaryngologist prior to performing microantrostomy on patients under twelve-years-old.

[¶ 4.] At the trial of the *Heiberger* malpractice case, Setliff testified on behalf of the plaintiff. During cross-examination by the defense, he again denied that an investigation resulted from a complaint while he was in Sheridan. He did admit that a two-year peer review had occurred. In denying the defense counsel's interpretation of the peer review during cross-examination, he testified to the following:

Q. Now, was there an investigation done by the Executive Committee at the [Sheridan] hospital which included hiring independent physicians to review your cases when you were at the hospital in Sheridan, Wyoming?

A. With regard to what, ma'am?

Q. Investigation into complaints in regard to your practice of medicine?

A. No.

. . .

Q. Was there not an Executive Committee that contracted outside reviewers, three Board certified otolaryngologists, to provide an independent, unbiased review of your hospital records?

A. That took place in the absence of a specific complaint.

Q. And the complaint was in regard to your practice of medicine; is that correct?

A. There was no complaint.

---

1. The malpractice case was entitled *Heiberger v. Rietz.* Setliff treated Heiberger after Rietz allegedly treated him in a negligent manner.

2. Microantrostomy is a form of sinus surgery that provides sinus drainage.

Q. The complaint was in regard to your performing the surgical procedure, microantrostomy?

A. Absolutely not.

Q. Do you agree, Dr. Setliff, that an investigation was done?

A. Absolutely not.

Q. Do you agree that your privileges were restricted ... or limited in any way while you were practicing in the state of Wyoming.

A. Absolutely not.

[¶ 5.] The defense lawyer went on to have Setliff read information from the findings of fact and conclusions of law, In the Matter of the Staff Privileges of Reuben C. Setliff, M.D., from the Sheridan hospital, which stated:

Dr. Setliff shall be required to obtain a preoperative second opinion from a Board Certified Otolaryngologist who has examined his patients before performing microantrostomy on patients 12 years of age and under. The second opinion need not agree with Dr. Setliff's opinion, but the patient's custodial parents or guardians shall acknowledge in writing that they have received the second opinion, and have made a decision to permit the surgery on the child with full knowledge of any diversity of opinion.

Defense counsel then questioned Setliff about a lawsuit he brought against the Sheridan hospital based on that peer review.[3]

[¶ 6.] After testifying in the trial, Setliff was notified that the Board was undertaking an investigation regarding his testimony in the *Heiberger* medical malpractice case. The Board held an informal conference on June 6, 2000. Charvin Dixon, counsel for the Board, told Setliff that Kathryn Hoskins, defense counsel in the malpractice case, had filed a complaint alleging Setliff had testified falsely at trial, when in fact the Board contacted Hoskins of its own volition and requested a transcript from the malpractice case. Setliff also discovered during the informal conference that Dr. Ferrell, who was an expert witness for Reitz at the malpractice case, was on the committee that investigated Setliff's testimony.[4]

[¶ 7.] Setliff claimed the testimony under investigation was based, in part, on the advice of counsel. Before Setliff applied for staff privileges in Sioux Falls, Setliff had hired an attorney who specialized in disputes between physicians and hospitals to determine if the second opinion requirement imposed on him by the Sheridan hospital constituted a restriction on his privileges. The attorney advised him that the second opinion requirement did not equate to a privilege restriction. Therefore, the attorney advised Setliff that he need not disclose this incident in applications for privileges at other hospitals.

[¶ 8.] After the investigation and informal conference, the Board found Setliff had made false statements regarding his history at the Sheridan hospital and that

---

**3.** Setliff sued the Sheridan hospital based on the alleged investigation by the hospital. *See Setliff v. Memorial Hosp. of Sheridan County,* 850 F.2d 1384 (10thCir.1988). During preparation for this unsuccessful action against the hospital, Setliff had referred to the hospital's review as an "investigation" in some affidavits. During these federal court proceedings Setliff alleged that his medical privileges had been restricted by the hospital in Wyoming. This, however, Setliff later explained, was the

characterization of the attorney who drafted the documents.

**4.** Ferrell was allegedly put on the investigation committee because he was a direct competitor of Setliff with potential bias. Therefore, he was placed on the committee to investigate and not the adjudication board, which serves as the trier of fact.

Setliff "knowingly and intentionally testified falsely as an expert witness" in the *Heiberger* case, which was determined to be a "serious breach of law, ethics, and professional decorum." It further concluded that this constituted conduct "unbecoming a person licensed to practice medicine . . . in violation of SDCL 36–4–29(2)." Importantly, the Board also held that "conduct unbecoming a person licensed to practice medicine does not require proof in strict conformance to any legal standards for perjury or false statement as defined by South Dakota law." Despite the fact that Setliff was advised by counsel before the malpractice case began that he had not had his privileges restricted, the Board stated that "Dr. Setliff's false testimony in the *Heiberger* case exposed him to personal discredit and brought dishonor and disrepute to the medical profession and was a serious breach of law and ethics." Therefore, the Board revoked Setliff's license for six months and assessed him the costs of the proceeding.

[¶ 9.] The circuit court, on the other hand, reversed and acknowledged Setliff's belief that the second opinion requirement did not constitute a restriction on privileges was justifiably based on the advice of a healthcare lawyer. Therefore, the circuit court held that even if Setliff's characterization of the second opinion requirement was wrong, the evidence demonstrates that Setliff had valid reasons to believe his testimony was truthful. The Board appeals and raises the following issue:

[¶ 10.] **Whether the Board abused its discretion by revoking Setliff's medical license for six months based on a finding of conduct unbecoming a person licensed to practice medicine.**

## STANDARD OF REVIEW

[¶ 11.] We have previously acknowledged that SDCL 1–26–36 governs review of agency decisions. SDCL 1–26–36 provides:

The court shall give great weight to the findings made and inferences drawn by an agency on question of fact. . . . The court may reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusion, or decision are:

(1) In violation of constitutional or statutory provisions;

(2) In excess of the statutory authority of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Clearly erroneous in light of the entire evidence in the record; or

(6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. . . .

[¶ 12.] We review the administrative agency's decision in the same manner that the circuit court did, with no presumptions of correctness on behalf of the circuit court's decision. *Foley v. State ex rel. S.D. Real Estate Comm'n*, 1999 SD 101, ¶ 6, 598 N.W.2d 217, 219 (quoting *Cheyenne River Sioux Tribe Tel. Auth. v. Pub. Util. Comm'n*, 1999 SD 60, ¶ 12, 595 N.W.2d 604, 608) (other citations omitted). Questions of fact are reviewed under the clearly erroneous standard. *Id.* (citing *Application of Northwestern Bell Tel. Co.*, 382 N.W.2d 413 (S.D.1986)). Questions of law, on the other hand, are fully reviewable. *Id.* (citing *Matter of State & City Sales Tax Liability of Quality Railcar Repair Corp.*, 437 N.W.2d 209 (S.D.1989)). "Mixed questions of law and fact are also fully reviewable." *Id.* (citing *Permann v. Dep't of Labor, Unemp. Ins. Div.*, 411 N.W.2d 113 (S.D.1987)). *See also, Water-*

*town Co-op. Elevator Assoc. v. S.D. Dept. of Rev.*, 2001 SD 56, ¶ 10, 627 N.W.2d 167, 171 (reiterating that the traditional standard of review is applicable as provided herein).[5]

[¶ 13.] The standard of review for the revocation of a professional license is as follows:

> The general burden of proof for administrative hearings is preponderance of the evidence. We are inclined to adhere to this general principle with the following exception. In matters concerning the revocation of a professional license, we determine that the appropriate standard of proof to be utilized by an agency is clear and convincing evidence.

*Id.* The "clear and convincing" standard lies somewhere between "the rule in ordinary civil cases and requirements of our criminal procedure, that is, it must be more than a mere preponderance but not beyond a reasonable doubt." *Id.* (citing *Kent v. Lyon*, 1996 SD 131, ¶ 15, 555 N.W.2d 106, 111 (additional citations and internal quotations omitted)).

## DECISION

[¶ 14.] The circuit court determined that the Board should be bound by a criminal standard for perjury pursuant to SDCL 22–29–1 when determining whether Setliff, in fact, testified falsely. Furthermore, it found that Setliff's statement that the review was a peer review rather than an investigation is an opinion, and not the product of false testimony.

[¶ 15.] The Board has been given the authority by the state legislature to determine whether to cancel, revoke, suspend or limit a physician's license for unprofessional conduct. *See* SDCL 36–4–29. The unprofessional conduct alleged by the Board against Setliff is "engaging in conduct which is unbecoming to a person licensed to practice medicine." SDCL 36–4–30(22). There is no definitive description as to what constitutes conduct "unbecoming to a person licensed to practice medicine." Furthermore, there is little guidance from case law of other jurisdictions for determining what standard a board should use when analyzing the truthfulness of a physician's testimony at a trial in which he is acting as an expert witness. Courts have analyzed similar questions, but none are directly analogous. *See Joseph v. D.C. Bd. of Med.*, 587 A.2d 1085, 1086 (D.C.App. 1991) (giving false testimony regarding one's credentials while testifying as an expert witness in a medical malpractice case constitutes the practice of medicine and provides grounds for disciplinary action); *Missouri Bd. of Registration for the Healing Arts v. Levine*, 808 S.W.2d 440, 441–42 (Mo.Ct.App.1991) (affirming decision not to discipline non-treating otolaryngology specialist for false testimony regarding the number of times it took to pass his boards because it was not the practice of medicine); *Hayes v. State Med. Board of Ohio,*

---

5. Counsel for Setliff argues the recent amendment to SDCL 15–6–52(a) alters the traditional standard of review. He argues that we review the trial court's findings, rather than looking at the administrative body's decision. We find that the amendment to SDCL 15–6–52(a) applies only to decisions involving a circuit court as a trial court, not cases first reviewed by the administrative body and appealed to a circuit court. Deference to the administrative body is still in force under the review stated under SDCL 1–26–36.

We further acknowledge that our statement in *Webster Education Association v. Webster School District*, 2001 SD 94, ¶ 4, 631 N.W.2d 202, 204, was incorrect. As Justice Konenkamp aptly acknowledged in his concurrence, we should have waited for a more appropriate case, such as the one at hand, to determine the effects of the amendment to SDCL 15–6–52(a). *Id.* ¶ 16 (Konenkamp J., concurring).

138 Ohio App.3d 762, 742 N.E.2d 238, 244 (2000) (holding medical board's finding that appellant engaged in misrepresentation before a committee and board was supported by "reliable, probative and substantial evidence," thus no abuse of discretion occurred). Thus, this case presents a unique question.

[¶ 16.] In South Dakota, precedent makes abundantly clear that Setliff's license cannot be revoked unless his misconduct is proven by clear and convincing evidence. *See In the Matter of Zar*, 434 N.W.2d 598, 602 (S.D.1989). The grounds "unbecoming to the practice of medicine" leaves discretion for the Board in cases involving that issue, which is acceptable. *See McDaniel v. N.M. Bd. of Med. Examiners*, 86 N.M. 447, 525 P.2d 374, 377 (N.M.1974) (holding "conduct unbecoming in a person licensed to practice medicine" is not unconstitutionally vague); *Chastek v. Anderson*, 83 Ill.2d 502, 48 Ill.Dec. 216, 416 N.E.2d 247, 249 (1981) (holding broad terms defining unprofessional conduct within state statute were not unconstitutionally vague). "It is unnecessary for a statute to enumerate specific acts which constitute unprofessional conduct.... [A]lthough unprofessional conduct should not be given an overly broad connotation, it must relate to conduct which indicates an unfitness to practice medicine." *Chastek*, 48 Ill.Dec. 216, 416 N.E.2d at 250 (internal citation omitted). Because it is "impossible to catalogue all of the types of professional misconduct" the Board is given broad terms under which to analyze each case. *Id.*

[¶ 17.] As acknowledged in the *Zar* case, in which a Psychologist's license was revoked for unprofessional conduct, the high standard of proof is necessary before revoking a license because of the "importance of the interest involved, i.e., a professional's career." *In re Zar*, 434 N.W.2d at

602. Clear and convincing evidence must be presented, which is "so clear, direct ... weighty and convincing as to enable either a judge or jury to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Id.* at 602 n. 7. Moreover, "[w]e are acutely aware that a professional license, reputation, and livelihood are at stake whenever suspension is a possibility. Under those circumstances, a professional is due every consideration." *Nelson v. S.D. State Bd. of Dentistry*, 464 N.W.2d 621, 625 (1991). For these reasons, we have carefully combed through the evidence upon which the Board has chosen to revoke Setliff's license.

■ [¶ 18.] The Board's allegation that no legal standard is applicable when determining if a licensee testified falsely is untrue. Although the Board need not follow this state's legal definition of perjury under the criminal statutes, as is alleged by the circuit court, the Board must prove its grounds for finding conduct unbecoming to the profession by clear and convincing evidence. *See In re Zar*, 434 N.W.2d at 602. The grounds alleged here are false testimony; thus, the existence of false testimony must be clearly proven. Setliff acknowledged that a peer review had taken place, resulting in the second opinion requirement. Even if he refused to admit there was an investigation resulting in restricted privileges, he did not hide the fact that the Sheridan hospital looked into his practice. As the circuit court acknowledged, Setliff believed his testimony was accurate and made no attempt to conceal the review in Sheridan. Setliff testified about the second opinion requirement and even read portions of the Findings of Fact and Conclusions of Law produced by the Sheridan Hospital Board of Trustees, which had a description of the review and second opinion requirement.

[¶ 19.]   Additionally, Setliff testified at the Medical Board Hearing that his new attorney had advised him that there was no restriction on his privileges in Wyoming.[6]   We acknowledge that although reliance on an attorney's advice is not always an outright defense to wrongful actions, such reliance may be used to support a person's testimony under oath.   *See Hannahs v. Noah*, 83 S.D. 296, 158 N.W.2d 678, 683 (S.D.1968) (stating good faith reliance on counsel's advice could be considered by the jury on the issue of exemplary damages); *Sheetz v. Bowles Rice McDavid Graff & Love*, PLLC, 209 W.Va. 318, 547 S.E.2d 256, 263–266 (2001) (acknowledging reliance on advice of counsel is generally not defense to charges that one acted unlawfully or negligently); *State v. Puckett*, 6 Kan.App.2d 688, 634 P.2d 144, 152 (1981) (stating good faith reliance on counsel's advice could be considered when determining whether there was intent to defraud). *See also* 21 AmJur2d Criminal Law § 156 (1998) (stating the general rule that reliance on attorney's advice is not a defense to criminal prosecution, but acknowledging the advice may disprove intent required for offense).   Just as in other cases, the advice of Setliff's attorney should have been a factor considered on the issue of whether Setliff intended to lie in court. *See Puckett*, 634 P.2d at 152.   Therefore, it is clear that, although Setliff cannot wholly rely on the attorney's advice to negate responsibility for his action, the advice should have been considered when looking at his subjective intent to lie.   There is not clear and convincing evidence of false testimony in this record.

[¶ 20.]   Setliff's attorney was not the only source upon which Setliff can rely for supporting his statements that no investigation or restriction occurred.   When Setliff sued the Sheridan hospital for alleged damages based on the two-year peer review, the court denied his claim.   While upholding the district court's grant of summary judgment in favor of the hospital, it stated that "[n]o sanctions were imposed on him during the investigation" and "Setliff's employment status was never altered during the investigation which he allege[d] harmed his reputation."   *See Setliff*, 850 F.2d at 1396.

[¶ 21.]   Importantly, Setliff did attempt to explain why he failed to characterize the second opinion requirement as a restriction on his practice.   During cross-examination the attorney asked Setliff if he was telling the jury that the second opinion requirement was in no way a restriction, he stated as follows: "Absolutely, That's what I am telling you.   This was not a limiting factor for the following reason—."   Before giving his explanation, however, plaintiff's attorney cut him off by saying, "I didn't ask you the reason, Dr. Setliff."   This colloquy is yet further evidence to refute the Board's finding that Setliff intentionally testified falsely.

[¶ 22.]   Setliff may have appeared evasive by characterizing the happenings in the Sheridan matter as a review, not an investigation, and characterizing the result as a second-opinion requirement, not a restriction on privileges.   These characterizations obviously can be used to attack Setliff's credibility, but do not prove by clear and convincing evidence that Setliff testified falsely.   Setliff never denied the

---

**6.**   Setliff hired attorney Al Augustine to assist him in obtaining privileges at McKennan Hospital in Sioux Falls.   Augustine advised Setliff in 1997 that the matter in Wyoming was a peer review rather than a restriction of privileges or an investigation.   This opinion from the attorney was received by Setliff prior to his testifying in the malpractice case.   The attorney advised Setliff that he need not report the incident on an application for privileges at McKennan Hospital.

review, or the second opinion requirement. His play on words may have been unappealing to the Board, but certainly do not rise to the level of false testimony. The advice of counsel and statements by the Tenth Circuit create a reasonable basis for Setliff's belief that no investigation or restrictions occurred. We cannot hold the semantics utilized by Setliff equate to false testimony.

[¶ 23.] As we have previously stated, "[t]he revocation of a license of a professional ... carries with it dire consequences. It not only involves necessarily disgrace and humiliation, but it may mean the end of a professional career. In a proceeding so serious, due process of law requires a definite charge, adequate notice and a full, fair and impartial hearing." *Bruggeman v. S.D. Chem. Dependency Counselor Certification Bd.*, 1997 SD 132, ¶ 12, 571 N.W.2d 851, 853 (citation omitted). Here, the defendant in the malpractice case was allowed to use all of the information regarding the second opinion requirement to impeach Setliff's credibility, which was appreciated by a jury who found in favor of the defendant. Merely failing to agree one-hundred-percent with the defendant's interpretation does not equate false testimony. Based on the gravity of the result and the lack of evidence clearly demonstrating Setliff testified falsely, we agree with the circuit court, and reverse the Board's decision.

[¶ 24.] Based upon our holding on this issue, we find it unnecessary to address any other issues presented by the appellant.

[¶ 25.] In conclusion, we affirm the circuit court, but for the reasons set forth herein, as it is "a well entrenched rule of this Court" that we affirm correct decisions even when based on "wrong reasons." *Wolff v. Sec'y of S.D. Game Fish and Parks Dep't*, 1996 SD 23, ¶ 32, 544

N.W.2d 531, 536. *See also Poindexter v. Hand County Bd. of Equalization*, 1997 SD 71, ¶ 16, 565 N.W.2d 86, 91 (stating a correct judgment based on incorrect rationale will be affirmed).

[¶ 26.] Affirmed.

[¶ 27.] GILBERTSON, Chief Justice, and SABERS and KONENKAMP, Justices, concur.

[¶ 28.] GORS, Acting Justice, dissents.

[¶ 29.] ZINTER, Justice, not having been a member of the Court at the time this action was submitted, did not participate.

GORS, Acting Justice (dissenting).

[¶ 30.] I respectfully dissent.

[¶ 31.] Dr. Setliff is a liar. He lied to the court. He lied to the jury. Under oath.

[¶ 32.] In his federal litigation, Dr. Setliff alleged that a complaint had been filed against him in Wyoming, that there was an investigation, that his privileges had been restricted and that the proceedings were a permanent blotch on his record. By contrast, at the jury trial in Brookings in which Dr. Setliff appeared as an expert, he testified that there had been *no* complaint in Wyoming, *no* investigation and *no* restriction. Which is it?

[¶ 33.] The majority ameliorates Dr. Setliff's lie as evasive, semantics and a "play on words." To characterize Dr. Setliff's testimony as evasive is an understatement.

Q: Do you agree, Dr. Setliff, that an investigation was done?

A: Absolutely not.

Q: Do you agree that your privileges were restricted ... or limited in any way while you were practicing in the state of Wyoming.

A: Absolutely not.

Dr. Setliff's response "[a]bsolutely not" was direct, not evasive. If the answer to either question should be "yes," then "absolutely not" is a lie. Dr. Setliff cannot plead "semantics" or take refuge in a "play on words." There is no wiggle room in "absolutely not."

[¶ 34.] Dr. Setliff excuses his lie because an attorney said it was okay. Never mind that the doctor hired the attorney to tell him it was okay to lie. Advice of counsel is no excuse for lying. *See Evans v. Cameron,* 121 Wis.2d 421, 360 N.W.2d 25, 28–29 (1985). *See also Greene v. Morgan, Theeler, Cogley & Petersen,* 1998 SD 16, ¶ 40, 575 N.W.2d 457, 465 (Gilbertson, J., concurring in part and dissenting in part). Dr. Setliff also points out that he was impeached at the trial in Brookings and therefore his lie was not important. However, impeachment does not make lying right.

[¶ 35.] Nevertheless, Dr. Setliff is a liar. The board found by clear and convincing evidence that the doctor was a liar. This finding is not clearly erroneous.

[¶ 36.] Should lying under oath be grounds for suspension of his medical license? Yes. Why? Some might say that the only harm here is Dr. Setliff's dishonest testimony at trial, and there being no harm to a patient, his lie should not affect his medical license to treat patients.

[¶ 37.] If Dr. Setliff would lie to a court and a jury under oath, what might he tell his patients when he is *not* under oath? Would he tell them they need surgery when they do not? Yes. That is exactly why Dr. Setliff faced discipline in Wyoming. And that is what he lied about in South Dakota. Under oath. To a jury.