#23715-aff in pt, rev in pt & rem-RWS

**2006 SD 26**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

* * * *

RAYMOND E. MELIGAN,                                Plaintiff and Appellee,

  v.

DEPARTMENT OF REVENUE
AND REGULATION,                                    Defendant and Appellant.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

HONORABLE MAX A. GORS
Judge

* * * *

JOHN L. BROWN of
Riter, Rogers, Wattier & Brown
Pierre, South Daktoa                          Attorneys for plaintiff
                                             and appellee.


LAWRENCE E. LONG
Attorney General

DIANE BEST
GRANT GORMLEY
Assistant Attorneys General
Pierre, South Dakota                         Attorneys for defendant
                                             and appellant.

* * * *

ARGUED JANUARY 10, 2006

OPINION FILED **03/15/06**

#23715

SABERS, Justice

[¶1.]         The Department of Revenue and Regulation (Department) found that appraiser Raymond Meligan (Meligan) made eleven different errors and omissions in an appraisal which constituted violations of the Uniform Standards of Professional Appraisal Practice (USPAP).  Meligan appealed to the circuit court.  On review, the circuit court held that the Department's findings were either clearly erroneous or irrelevant and did not justify sanctions.  Department appeals.  We affirm in part and reverse in part and remand to allow the Department to determine appropriate sanctions for only those violations that have support in the record.

**Facts**

[¶2.]         Meligan is a state certified general appraiser who has been in the private appraisal business for almost twenty years.  In March 2002, Meligan was retained by America's Moneyline, Inc. to appraise property located at 3005 Karen Court, Pierre, Hughes County, South Dakota.

[¶3.]         Bob Tinker (Tinker) owned the property and sought to refinance through America's Moneyline.[1]  The building on the Tinker property is a 1930's barn that had been moved from Sully County, South Dakota.  Tinker obtained building and special use permits to remodel the barn and convert it into a year-round bed and breakfast.  The barn was remodeled to include five bedrooms and five bathrooms.  It has three floors, but the third floor was not finished.  Tinker

---

1.      The amount of the loan Tinker applied for is not in the record and the attorneys could not recall that amount when questioned by the Court during oral arguments.

-1-

advertised the property as "Horse Feathers Bed and Breakfast."[2]  He sought the refinancing in order to construct a six-car garage.

[¶4.]          On March 29, 2002, Meligan appraised the Tinker property.  Initially, Meligan did an appraisal that included the value of the six-car garage as finished.  However, America's Moneyline informed Meligan that it could not make a loan on an "as will be" basis.  Meligan later removed the value of the garage from the appraisal.

[¶5.]          America's Moneyline hired Kay Swanhorst (Swanhorst), an appraiser from Aberdeen, to conduct a second appraisal of the Tinker property in an effort to determine the accuracy of Meligan's appraisal.[3]  However, Tinker decided not to proceed with the loan because he was unable to obtain the interest rate he desired.  When Swanhorst arrived at the Tinker property, he informed her that an appraisal was unnecessary.  Swanhorst conducted a field appraisal despite Tinker's comments, but never inspected the interior of the building.

[¶6.]          Swanhorst concluded that Meligan's appraisal contained numerous errors.  She filed a complaint against Meligan with the Appraiser Certification Program.  The complaint alleged that Meligan's appraisal had been misleading, misrepresentative, and fraudulent.

[¶7.]          The Department assigned the complaint to Ken Simpson (Simpson), who performed a desk review of the Meligan appraisal.  Simpson found the

---

2.      The sign in front of the structure reads "Horse Feathers Lodge."

3.      Acquiring a subsequent appraisal by a different appraiser is common among lenders in the refinancing business.

appraisal to be incompetent and misleading. He claimed that Meligan violated the

USPAP[4] by:

> (1) Failing to disclose in the appraisal that the Tinker property had been used as a bed and breakfast,

> (2) Failing to disclose that the property was a 1930's barn moved to the site and extensively remodeled,

> (3) Failing to disclose in the primary report that the Tinker barn is a three-story structure,

> (4) Failing to include an intended user provision in the appraisal,

> (5) Failing to discuss that Comparable 3 was not a sale,

> (6) Listing an inaccurate address for Comparable 3,

> (7) Listing an inaccurate date of sale for Comparable 2,

> (8) Failing to properly certify the appraisal,

> (9) Failing to include a provision in the appraisal that identified the scope of the work,

> (10) Failing to include highest and best use analysis, and

> (11) Failing to include support for a land value opinion.

Although Simpson identified a total of eleven violations, his opinion was based

primarily upon the alleged failure to discuss the potential use as a bed and

breakfast and the failure to disclose that the Tinker property consisted of an old

barn that had been remodeled. Neither Simpson nor the Department claimed that

---

4. South Dakota's Administrative Rules governing appraisers require that an appraisal conform to the USPAP. ARSD 20:14:06:01 ("An appraisal must conform to the Uniform Standards of Professional Appraisal Practice, 2002 Edition.").

Meligan was inaccurate in terms of his ultimate valuation of the Tinker property.[5] The Department sent Meligan notice of its intent to suspend his state certified general appraiser license for ninety days and impose a fine in the amount of five hundred dollars. Additionally, the Department required Meligan to successfully complete an approved appraisal course.

[¶8.]      Meligan requested an administrative hearing after settlement negotiations with the Board were unsuccessful. At the hearing, Simpson testified as an expert witness on behalf of the Board. His testimony primarily concerned the eleven alleged violations he found in his initial examination of Meligan's appraisal.

[¶9.]      Meligan testified that although he made some of the alleged errors and omissions, they were merely technical violations that had no effect on the ultimate valuation of the property. He further testified that the Tinker property had been used primarily as a residence and that its highest and best use was as a residence. According to Meligan, a bed and breakfast is a residence under state law and a license to operate a bed and breakfast is non-transferable. Therefore, Meligan believed it would have been misleading had he portrayed the Tinker property as having additional value beyond that of a residence.

[¶10.]      Tinker also testified at the hearing. He testified that he lived in the building and had been living there for three to four years. One of Tinker's assistants had also been living in the building. Occasionally, Tinker would house

---

5.      Meligan appraised the property at $382,000. Swanhorst concluded its value was $260,000. Simpson did not appraise the property.

hunters, or allow state officers to conduct meetings on the premises. However, the Tinker property is seldom used as a bed and breakfast during the "off season."

[¶11.]        The administrative law judge (ALJ) found that Meligan's appraisal was fundamentally flawed for the reasons put forth by Simpson. Additionally, the ALJ made a finding that Simpson was credible and persuasive and that Meligan was not credible. Finally, the ALJ recommended that Meligan's appraiser license be suspended for ninety days, that he pay a fine of five hundred dollars, and that he successfully complete an approved appraisal course.[6] The Board adopted the ALJ's decision in its entirety.

[¶12.]        Meligan appealed the Board's decision to the circuit court. The circuit court issued a memorandum decision and its own findings of fact and conclusions of law. It found that several of the ALJ's findings of fact were clearly erroneous. The court noted that although Meligan admitted to several violations of USPAP, those violations were minor and had no effect on Meligan's valuation. Moreover, the court found that the penalty the Board imposed was disproportionately severe in light of the fact that nobody had been harmed by the appraisal. Ultimately, the court held that the Department's suspension was an abuse of discretion.

---

6.        The proposed fine and suspension were based on ARSD 20:14:11:03 (10) and (13). ARSD 20:14:11:03 permits the Department to impose discipline for "violating any provision of this article." Subsection (13) allows for discipline on the grounds of "negligence, refusal, or incompetence in developing … preparing … or communicating an appraisal." The Department also based its sanctions on violations of 20:14:06:01 (failure to conform to USPAP). *See* s*upra* n3.

## Standard of Review

[¶13.] "When a circuit court has reviewed an administrative agency's decision, we review the agency's decision unaided by any presumption that the circuit court's decision was correct." Kassube v. Dakota Logging, 2005 SD 102, ¶25, 705 NW2d 461, 465. SDCL 1-26-36 requires that we give great weight to the agency's factual findings and inferences. *In re* Klein, 2003 SD 119, ¶6, 670 NW2d 367, 368. Consequently, we will not set those findings or inferences aside unless they are clearly erroneous. *Id.* "The test is whether after reviewing all the evidence we are left with a definite and firm conviction that a mistake has been made." Kurtz v. SCI, 1998 SD 37, ¶9, 576 NW2d 878. However, if an agency makes factual determinations on the basis of documentary evidence, those determinations are reviewed *de novo.* Haynes v. McKie Ford, 2004 SD 99, ¶14, 686 NW2d 657, 661 (citing Watertown Coop. Elevator Ass'n v. State Dept. of Revenue, 2001 SD 56, ¶10, 627 NW2d 167, 171).

[¶14.] "In matters concerning the revocation of a professional license, we determine that the appropriate standard of proof to be utilized by an agency is clear and convincing evidence." *In re* Setliff, 2002 SD 58, ¶13, 645 NW2d 601, 605. That standard "lies somewhere between the rule in ordinary civil cases and requirements of our criminal procedure, that is, it must be more than mere preponderance but not beyond a reasonable doubt." *Id.* (additional citations and internal quotations omitted).

## Decision[7]

[¶15.]     We consider each of the claimed errors in reviewing the Department's

determination that Meligan's appraisal was incompetent.

> **1.    Failure to disclose that the Tinker property had potential use as a bed and breakfast.**

[¶16.]     Section 306 of the Fannie Mae Appraisal Guidelines requires an

appraiser to provide an adequate description of the mixed-use characteristics of a

subject property in the appraisal report.  Section 306 provides in part:

> Although we will purchase or securitize mortgages that are secured by properties that have a business use in addition to their residential use—such as property with space set aside for a day care facility, a beauty or barber shop, a doctor's office, a small neighborhood grocery or specialty store, etc.—we have special eligibility criteria for them.  Therefore, the appraiser must provide an adequate description of the mixed use characteristics of the subject property in the appraisal report[.]

The Fannie Mae guidelines are supplemental standards which must be met in order

to satisfy USPAP.[8]  It is undisputed that Meligan did not disclose in his appraisal

that the Tinker property had been used as a bed and breakfast.  Because Meligan

knew the property was being used as a bed and breakfast and did not disclose it, the

Department's finding in this regard is not clearly erroneous.

---

7.    Department and Meligan raise numerous issues on appeal.  We consolidate them to:  (1) Whether the Department's findings were clearly erroneous or irrelevant; (2) Whether there was sufficient evidence to support the Department's sanction; and (3) Whether the circuit court erred in vacating the Department's decision.

8.    Both Meligan and Simpson testified that the Fannie Mae Guidelines must be complied with in order to be consistent with USPAP.

[¶17.]     The circuit court found that although Meligan did not disclose this fact in his appraisal, it was insufficient as a basis for discipline. The court relied primarily upon the testimony of Tinker that the property was seldom used as a bed and breakfast and more often used as a residence. According to the circuit court, it would have been misleading to portray the property as having any additional value above that of a residence given the fact that Tinker only did a small amount of business as a bed and breakfast.

[¶18.]     The circuit court's finding is contrary to the standards set forth in the Fannie Mae Guidelines. The guidelines mandate full disclosure of mixed uses, without regard to the success of the business. The fact that the property was used primarily as a residence did not relieve Meligan of the duty to disclose that it was a mixed use property. In fact, section 306 of the guidelines provides that a mixed use property is only acceptable if it is "primarily residential in nature." Meligan should have disclosed that the Tinker property was intended to be used as a bed and breakfast, had been used as a bed and breakfast in the past, and may continue to be used as a bed and breakfast in the future.[9]

---

9.     The circuit court also relied heavily on the fact that Meligan appraised the property for what it was; a residence. Section 306 does provide that the market value of mixed use properties "be primarily a function of its residential characteristics, rather than of the business use or any special business use modifications that were made." However, that section also mandates that at a minimum, the business use be disclosed in the appraisal. While Meligan may have been correct as to value, that did not excuse him from disclosing how he arrived at the value.

### 2. Failure to disclose the Tinker property was a 1930's barn that had been remodeled.

[¶19.] The Department found that Meligan failed to disclose that the residence was a 1930's barn that had been extensively remodeled. In its findings of fact, the ALJ adopted the testimony of Simpson to support this finding. However, Simpson's testimony is entirely based on documentary evidence, *i.e.* Meligan's appraisal. Thus, we review the appraisal *de novo* and ascertain if it supports Simpson's opinion.

[¶20.] After reviewing the appraisal, we conclude the Department's finding is clearly erroneous. Attached to Meligan's appraisal are two pages titled "Footnotes and Addendum." Footnote 3 describes the property as completely remodeled and having the frame of an "old barn." We have consistently noted that "[t]he value of the opinion of an expert witness is no better than the facts upon which it is based. It cannot rise above its foundation and proves nothing if its factual basis is not true." *Haynes*, 2004 SD 99, ¶29, 686 NW2d at 664 (quoting Wiedmann v. Merillat Indus., 2001 SD 23, ¶17, 623 NW2d 43, 47-48). Although the ALJ had a copy of the appraisal, she failed to address footnote 3.

[¶21.] On appeal, the Department argues that although Meligan included the information in the footnote, he may not have considered it in the appraisal. The Department also argues that putting this information in a footnote "may be especially misleading to an out of state lender." However, the Department had the burden of proving this fact by clear and convincing evidence. The footnote expressly refers to the frame being that of an "old barn." The footnotes and addendum are as conspicuous as the text of the report. Requiring a sophisticated lender to read the

entire appraisal report, including the footnotes and addendum, is not too burdensome. The Department's argument fails in the absence of clear and convincing evidence that this information was either not considered in the appraisal, or placed in the footnote with intent to mislead.

> **3.    Failure to disclose in the primary report that the Tinker barn is a three-story structure.**

[¶22.]    Meligan's appraisal report does not mention that the Tinker barn is a three-story structure. However, footnote 3 explains that "attic is actually the third floor [and] is not yet finished." On appeal, the Department argues that it is possible that this representation was made to mislead an out-of-state lender into believing the barn was a traditional two-story structure.

[¶23.]    The record does not support that assertion. In addition to disclosing that the barn has a third floor, footnote 3 describes the third floor as having a "9'5 ceiling," "rough in for a bathroom," and "2 l[arge] windows also roughed in from the inside." In summary, the Department's factual finding is correct; Meligan did not refer to the third floor in the primary report. However, the inference that this amounts to intent to mislead is not supported by the documentary evidence and, is therefore error.

> **4.    Failure to include an intended user provision in the appraisal.**
> **5.    Failure to discuss that Comparable 3 was not a sale.**
> **6.    Listing of an inaccurate address for Comparable 3.**
> **7.    Listing of an inaccurate date of sale for Comparable 2.**

[¶24.]    Meligan concedes the above errors and omissions and that they constitute technical violations of USPAP. The circuit court found that they were

minor technical violations that did not warrant discipline because they had no effect on the appraisal.

[¶25.] The ALJ had the opportunity to listen to the testimony and judge the credibility of the witnesses in this matter. The ALJ rejected Meligan's defense that his errors and omissions were minor technical violations. Instead, the ALJ accepted Simpson's expert testimony that these errors, in the aggregate, amounted to an incompetent appraisal. In this respect, the circuit court erred when it substituted its judgment for that of the Department's. *See In re* Klein, 2003 SD 119, ¶13, 670 NW2d 367, 370-71 (rejecting Klein's identical argument that his violations of USPAP were minor and warranted no discipline). Indeed, Simpson's testimony is consistent with USPAP Standard 1-1(c) which forbids appraisers from:

> render[ing] appraisal services in a careless or negligent manner, such as by making a series of errors that, although individually might not significantly affect the results of an appraisal, in the aggregate affect the credibility of those results.

> **8.** **Failure to identify the scope of the work.**
> **9.** **Failure to include a proper certification.**

[¶26.] When Meligan answered the complaint in this case, he acknowledged that he had provided the Department with a complete version of his appraisal. However, the copy the Department received did not contain a certification or an identification of the scope of the work Meligan performed. Meligan failed to provide the Department with either of these documents throughout these proceedings.

[¶27.] At the administrative hearing, Meligan conceded USPAP requires a proper certification and scope of the work document to be included with an

appraisal.[10] Meligan, however, claimed that those documents were sent to his client with his original appraisal. The ALJ found that "Meligan's testimony in this regard is not credible."

[¶28.] On review, the circuit court read the hearing transcript and chose to believe Meligan. As a result, he set aside the ALJ's credibility determination as clearly erroneous. Because this was an issue of credibility, the circuit court was in error when it substituted its judgment for that of the ALJ's.

### 10. Failure to include highest and best use analysis.

[¶29.] Simpson testified USPAP required Meligan to include a highest and best use analysis in the appraisal and that Meligan failed to provide one. Meligan's explanation was that he determined the highest and best use was residential, and then checked the appropriate box accordingly. The ALJ found that Meligan failed to include the proper analysis which was in violation of USPAP. After reviewing the record, we find the ALJ's finding to be supported by sufficient evidence.[11]

### 11. Failure to include support for a land value opinion.

[¶30.] Meligan concedes that he did not include support for a land value opinion. He testified that he believed one was not necessary unless the land accounted for more than thirty percent of the total value. Simpson disagreed, and

---

10. USPAP Standard 1-2(f) requires appraisals of real property to "identify the scope of the work necessary to complete the assignment." Standard 2-3 requires an appraisal report to contain a signed certification.

11. The circuit court found this finding to be clearly erroneous. However, it only points to Meligan's testimony that he "checked highest and best use." USPAP Standard 1-3(b) requires an appraiser to "develop an opinion of the highest and best use of the real estate."

testified that Meligan's omission was a violation of USPAP. The ALJ agreed with Simpson.[12]

[¶31.] On review, the circuit court adopted Meligan's version. Because there was conflicting testimony, the ALJ was in a better position than the circuit court to make this determination. Therefore, the circuit court erred when it rejected this finding.

[¶32.] In summary, nine of the Department's eleven allegations are supported in the record. However, the Department's allegations that Meligan failed to (1) disclose that the structure was a barn, and (2) disclose that it had three stories are erroneous. Those claims are contrary to the documentary evidence before this Court. Because the Department based Meligan's discipline at least, in part, on erroneous facts, the sanction it imposed was an abuse of discretion.

[¶33.] The circuit court erred in reversing all of the Department's factual findings and vacating the Board's decision. Meligan may be subject to discipline for the nine errors and omissions that have support in the record. This case should be remanded to the Department to decide the discipline, if any, that should be imposed upon Meligan, consistent with this opinion. On remand, the Department should consider the claim that Meligan's alleged failure to disclose that the property was a 1930's remodeled barn was, according to the Department's own expert, one of the most "paramount troubling issue[s]" with the appraisal. We have found that claim

---

12. We cannot find anything in the USPAP Standards or comments to the Standards that support Meligan's assertion.

to be erroneous. The Department should also consider the fact that no person or entity relied upon or was harmed by Meligan's appraisal. [13]

[¶34.] GILBERTSON, Chief Justice, KONENKAMP, Justice, and TRIMBLE, Circuit Judge, concur.

[¶35.] MEIERHENRY, Justice, concurs in part and dissents in part.

[¶36.] TRIMBLE, Circuit Judge, sitting for ZINTER, Justice, disqualified.

MEIERHENRY, Justice (concurring in part, dissenting in part).

[¶37.] I agree that the Department's decision should be reversed, but I disagree that the case should be remanded. The scope of appellate review is governed by SDCL 1-26-36. On appellate review, courts may affirm, remand the case for further proceedings, or "reverse or modify the decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: . . . (5) Clearly erroneous in light of the entire evidence in the record; or (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion." SDCL 1-26-36. Further, "[a] court shall enter its own findings of fact and conclusions of law or may affirm the findings and conclusions entered by the agency as part of its judgment." SDCL 1-26-36. Here, the Department's decision contained clearly erroneous findings of fact and was an abuse of discretion.

---

13. Policy Statement 10(e) of the Policy Statements of the Appraisal Subcommittee notes, "financial loss or the lack thereof is not an element in determining whether there is a USPAP violation; the extent of such loss, however, should be a factor in determining the appropriate level of discipline."

[¶38.]     Judge Gors reviewed this matter and determined that although the appraisal "contained some minor violations of USPAP," the Department's penalty was "disproportionately severe since there was no actual harm." The majority appears to have arrived at much the same conclusion; that is, the violations do not warrant the severity of the penalty. As authorized by SDCL 1-26-36, the trial court entered its own findings of fact and conclusions of law. The majority agrees with some of the trial court's findings and disagrees with others. Nevertheless, the majority agrees with Judge Gors' conclusion that the Department abused its discretion. Judge Gors determined that the abuse of discretion warranted reversal. I agree. Consequently, I would affirm the circuit court and reverse the Department's decision. I would not remand to the Department for further consideration.