1997 SD 70

Juanita ENGER, Claimant and Appellee,

v.

FMC, Employer and Appellant,

and

National Union Fire Insurance Company, Insurer and Appellant.

No. 19851.

Supreme Court of South Dakota.

Considered on Briefs April 29, 1996.

Decided June 18, 1997.

Drew Johnson of Fritz, Hogan & Johnson, Aberdeen, for appellee.

Peter Sommervold and Melanie Carpenter of Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, for appellants.

GILBERTSON, Justice.

[¶ 1.] FMC and its workers' compensation insurer, National Union Fire Insurance Company, appeal from the circuit court's determination that Juanita Enger was entitled to payments for permanent total disability under the odd-lot doctrine of workers' compensation. We affirm.

## FACTS AND PROCEDURE

[¶ 2.] Juanita Enger was employed in November 1988 as a shop technician at FMC in Aberdeen. FMC is a defense contractor which builds missile canisters for the federal government. During the five years Enger was employed by FMC, she assembled cables. She testified her duties consisted of:

[S]tripping wires with a tool, pulling the sleeving off of the wire, winding the inside wires back and around, attaching a solder sleeve over that, melting the sleeve down, taking the wires apart on the inside, clipping off the ends of the inside insulation, attaching a pin, and crimping the pin down, putting the wires together into a bundle, putting them into a hose, pinning the wires that are in the hose into a connector. The connector can have from ... two wires up to 100 wires [that must be pinned] into a connector.

Enger worked at least 40 hours per week, with frequent overtime.

[¶ 3.] After working for FMC three years, in late 1991 and early 1992, Enger began experiencing pain in her hands and sought medical treatment. Her condition was initially diagnosed and treated as tendonitis. In January 1993, Enger was diagnosed as having bilateral carpal tunnel in both hands and in her wrists. Enger underwent surgery to release the pressure on the nerves. Surgery on one hand was performed February 4, 1993; surgery on the other was February 23, 1993. She returned to work at FMC on April 5, 1993. About three weeks later, Enger was diagnosed with tardy ulnar nerve palsy in her left elbow. She underwent surgery on her elbow on May 6, 1993 and returned to work at FMC one month later. It is the opinion of the orthopedic surgeon who treated Enger, Dr. Michael Holte, that the hand and elbow injuries were caused by the repetitive nature of Enger's work at FMC. FMC and its insurer paid for temporary disability benefits for these injuries.

[¶ 4.] Defense industry cutbacks and overseas competition resulted in layoffs at FMC, and Enger was one of the workers who found herself unemployed. Because of the nature of the layoffs, Enger qualified for federal retraining funds. She enrolled in the histology[1] program at Presentation College with hopes of getting a job in a medical laboratory after graduation. Enger took a heavier course load so that she could graduate in two years rather than three, because the retraining funds were only available for two years.

Even though Enger made the dean's list, she dropped out of college after one semester and summer school. Enger testified the pain in her arms and hands prevented her from taking notes, and alternate methods (including tape recording lectures and borrowing notes) did not allow her to keep up with her classwork. In addition, she discovered that there was no job market for histology graduates in Aberdeen, since the college kept the local labs supplied with interns from the college. Enger is 53 years old, lives on the family farm near Groton, and testified it was not feasible to relocate.

[¶ 5.] Enger immediately attempted to obtain employment with area electronic manufacturers and retail stores. She found work as a cashier at Wal-Mart, but quit that job after three weeks. Enger testified she could not feel the money and had difficulty counting out change, due to the loss of sensation in her fingertips. The problem caused her to be so slow in balancing out her till at the end of the night that she was often the last clerk to leave the store. She said she was frightened to leave alone and make the 20-mile drive to her home late at night.

[¶ 6.] Enger started looking for a job again, and in September 1994 was hired by the Super 8 motel chain as a reservations clerk. She took telephone reservations and entered them into a computer. Enger continued to have problems with her hands and arms and returned to Dr. Holte in early December 1994. Dr. Holte took Enger off work for a week, and when she returned to the doctor for a follow-up visit a week later, he took her off work indefinitely. Enger has remained off work since December 14, 1994.

[¶ 7.] FMC and its insurer paid for temporary disability benefits, but denied additional benefits, claiming Enger's work at Super 8 caused a successive injury that shifted any responsibility for further disability benefits away from FMC. Enger appealed the denial of benefits to the South Dakota Department of Labor, claiming total permanent disability due to a recurrence of the repetitive motion injuries she received at FMC. Following a

1. That department of anatomy which deals with the minute structure, composition and function of the tissues. Dorland's Medical Dictionary, 25th Ed. p 717.

hearing, the Department issued a decision on April 3, 1996, concluding that: 1) Enger had not suffered a successive injury that would shift the workers' compensation liability to the subsequent employer (Super 8); and 2) Enger was obviously unemployable and thereby entitled to odd-lot benefits.

[¶ 8.] FMC and its insurer appealed the decision of the Department to the circuit court. Following briefing and oral argument, the court reversed the Department's finding that Enger was obviously unemployable, but affirmed the determination that Enger was totally disabled under the odd-lot doctrine. In addition, the court affirmed the Department's determination that the injury was recurring rather than an aggravation of the pre-existing injury.

[¶ 9.] FMC raises the following issues on appeal:

1. Whether the circuit court erred in ruling that FMC was responsible for Enger's final disability.

2. Whether the circuit court erred in ruling that Enger had established her entitlement to odd-lot benefits.

3. Whether the circuit court erred by failing to remand the case based on its reversal of the Department's determination that Enger was obviously unemployable and based on its determination that the Department did find that a reasonable job search was made.

## STANDARD OF REVIEW

[¶ 10.] The Department of Labor is a state agency. Our review of agency decisions is well-settled.

The standard of review ... is controlled by SDCL 1–26–36. The Supreme Court makes the same review of the administrative agency's decision as did the circuit court, unaided by any presumption that the circuit court's decision was correct. When the issue is a question of fact, the actions of the agency are judged by the clearly erroneous standard. When the issue is a question of law, the actions of the agency are fully reviewable. Mixed questions of law and fact are also fully reviewable.

*Tieszen v. John Morrell & Co.*, 528 N.W.2d 401, 403–04 (S.D.1995).

## LEGAL ANALYSIS

### [¶ 11.] 1. Whether the circuit court erred in ruling that FMC was responsible for Enger's final disability.

[¶ 12.] South Dakota has adopted the "last injurious exposure rule" when considering successive injuries. Under that rule,

When a disability develops gradually, or when it comes as the result of a succession of accidents, the insurance carrier covering the risk at the time of the most recent injury or exposure bearing a causal relation to the disability is usually liable for the entire compensation.

*Schuck v. John Morrell & Co.*, 529 N.W.2d 894, 900 (S.D.1995) (citing *Novak v. C.J. Grossenburg & Son*, 89 S.D. 308, 311, 232 N.W.2d 463, 464–65 (1975)).

[¶ 13.] The determination of how the last injurious exposure rule applies to a particular claim is based on a factual determination: whether the successive injury is a mere recurrence or an independent aggravation of the first injury.

In successive injury cases, the original employer/insurer remains liable if the second injury is a mere recurrence of the first. If the second injury is an aggravation that contributes independently to the final disability then the subsequent employer/insurer is liable.

*Schuck*, 529 N.W.2d at 900.

[¶ 14.] Because whether an injury is a mere recurrence or an independent aggravation is a question of fact, *see, e.g., Hull v. Aetna Ins. Co.*, 247 Neb. 713, 529 N.W.2d 783, 789 (1995); *Peek v. SKW/Clinton*, 855 P.2d 415, 418 (Alaska 1993), it is subject to the clearly erroneous standard of review. The application of the last injurious exposure rule to that factual determination is a question of law subject to de novo review. *Paulson v. Black Hills Packing Co.*, 1996 SD 118, ¶ 7, 554 N.W.2d 194, 196.

[¶ 15.] The circuit court in this case properly stated the clearly erroneous standard of review should be used to deter-

mine whether the injury to Enger was a mere recurrence rather than an independent aggravation. When we review under the clearly erroneous standard:

The question is not whether there is substantial evidence contrary to the agency finding, but whether there is substantial evidence to support the agency finding. In other words, even if there is evidence in the record which tends to contradict the Department's factual determination, so long as there is some "substantial evidence" in the record which supports the Department's determination, this court will affirm. Great weight is given to the findings made and inferences drawn by an agency on questions of fact.

*Kent v. Lyon,* 1996 SD 131, ¶ 15, 555 N.W.2d 106, 110.

[¶ 16.] The clearly erroneous standard of review applies to findings of fact based on the entire record. However, the medical testimony in this case appears to be the sole basis for the circuit court's finding of recurrence, and that testimony was solely by deposition. It is well settled that deposition testimony receives de novo review. *Hanten v. Palace Builders, Inc.,* 1997 SD 3, ¶ 8, 558 N.W.2d 76, 78. FMC correctly argues that the circuit court in this case applied the wrong standard of review;[2] however, because we review the same testimony de novo,[3] it is harmless error. *Cf. Jennings v. Jennings,* 309 N.W.2d 809, 812 (S.D.1981) (trial court's use of clear and convincing standard in fraud case instead of correct preponderance standard was harmless error when there was no evidence of fraud to meet either standard).

[¶ 17.] We have stated the primary inquiry in determining whether the claimant's disability was a mere recurrence or an independent aggravation is "whether his [second injury] independently contributed to [his] current disability." *Schuck,* 529 N.W.2d at 900. However, the distinction between the meaning of these two concepts is gray.

If the second injury takes the form merely of a recurrence of the first, and if the second incident does not contribute even slightly to the causation of the disabling condition, the insurer on the risk at the time of the original injury remains liable for the second.

9 Arthur Larson, *Larson's Workmen's Compensation Law* § 95.23. It is clear from this language that the contribution of the second injury, however slight, must be to the *causation* of the disability. Enger's continued use of her hands in employment subsequent to FMC did not "contribute even slightly" to the *cause* of the disability; the disability already was in existence at the time she left FMC. The record shows the symptoms Enger experienced as a result of her FMC injury continued up to the date of her employment at Super 8 and thereafter, with no new symptoms. We look to whether a significant occurrence, amounting to an independent contribution to the final disability, causes an onset of increased or new symptoms. *See Paulson,* 1996 SD 118 at ¶ 15, 554 N.W.2d at 196 (agreeing with circuit court's determination that the second injury is an independent aggravation because "it resulted in new problems or symptoms[.]"); *Schuck,* 529 N.W.2d at 900 (stating, "In order to find aggravation, it must be shown that the second episode contributed independently to the final disability."); *see also Crowe v. Jeld–Wen,* 77 Or.App. 81, 712 P.2d 145, 149 (1985) (stating, "[T]here must be evidence of a second injury which materially contributed to the claimant's disability." (quotations and citations omitted.)).

[¶ 18.] In order to determine whether there was an independent contribution to the injury Enger suffered at FMC, we must review the medical testimony in this case. We have consistently required expert medi-

---

2. In all fairness, the record reflects that the circuit court did review the deposition transcript de novo; its memorandum decision cites from the deposition transcript, not the Department's findings, but the circuit court specifically found that the injury was a recurrence solely by virtue of the "substantial evidence" in the deposition.

3. "When reviewing evidence presented by deposition, we do not apply the clearly erroneous rule but review that testimony as though presented here for the first time." *Day v. John Morrell & Co.,* 490 N.W.2d 720, 723 (S.D.1992).

cal testimony in establishing causation for workers' compensation purposes, *Day,* 490 N.W.2d at 724; *Wold v. Meilman Food Indus., Inc.,* 269 N.W.2d 112, 115 (S.D.1978); *Howe v. Farmers Coop. Creamery,* 81 S.D. 207, 212, 132 N.W.2d 844, 846 (1965); and we have held that when the medical evidence is not conclusive, the claimant has not met the burden of showing causation by a preponderance of the evidence. *Hanten,* 1997 SD 3 at ¶ 9, 558 N.W.2d at 78. "Causation must be established to a reasonable medical probability, not just a possibility." *Id.* at ¶ 15, 558 N.W.2d at 80 (citing *Harden v. South Dakota Credit Union League, Inc.,* 87 S.D. 433, 438, 209 N.W.2d 665, 667 (1973)).

[¶ 19.] While we agree with the circuit court that the deposition testimony could be characterized as somewhat equivocal, examining it as a whole, we find the preponderance of the evidence shows that Enger's condition would have worsened to the same degree with or without the intervening employment at Super 8. We also consider Enger's testimony before the Department. Using the clearly erroneous standard of review, we find substantial evidence in her testimony that she continued to experience worsening problems with her hands and arms after leaving FMC and before her employment with Super 8. We hold the Department was not clearly erroneous in finding a recurrence of Enger's injuries, and we conclude FMC is liable for her workers' compensation claim under the "last injurious exposure" rule.

[¶ 20.] **2. Whether the circuit court erred in ruling that Enger had established her entitlement to odd-lot benefits.**

[¶ 21.] A workers' compensation claimant may obtain permanent total disability benefits under what is commonly known as the odd-lot doctrine. Under the odd-lot doctrine:

[A] person is totally disabled if his physical condition, in combination with his age, training, and experience, and the type of work available in his community, causes him to be unable to secure anything more than sporadic employment resulting in insubstantial income.

*Spitzack v. Berg Corp.,* 532 N.W.2d 72, 75 (S.D.1995).

[¶ 22.] Whether a claimant is qualified for odd-lot disability benefits is a question of fact subject to review under the clearly erroneous standard. *Petersen v. Hinky Dinky,* 515 N.W.2d 226, 231 (S.D. 1994). The initial burden is on the claimant to make a prima facie showing that she belongs in the odd-lot disability category by showing either: 1) she is obviously unemployable; or 2) suitable employment is unavailable. *Id.* at 231–32.

[¶ 23.] In the case at bar, the circuit court reversed the Department's ruling that Enger was obviously unemployable. She has not appealed that decision. Therefore, the burden falls on her to show that suitable employment is unavailable in order for her to qualify for the odd-lot disability category.

[¶ 24.] A claimant can show suitable employment is unavailable by demonstrating she made reasonable but unsuccessful attempts to find work. *Id.* at 232. The circuit court upheld the Department's finding that Enger "has unsuccessfully made more than reasonable efforts to find work." Enger was a fifty-year-old woman with a high school education whose job experience was primarily in assembly work. She applied for work at retail stores, restaurants, and electronics companies, and ultimately was hired by Super 8 and Wal–Mart. She signed up for work at the local Job Service office, and sought help in finding employment through the Aberdeen Vocational Rehabilitation Center and Aberdeen Career Planning Center. She attempted vocational retraining at Presentation College. We believe the record contains substantial evidence to support the finding that she made a reasonable yet unsuccessful job search.

[¶ 25.] Because Enger, by her job search, has met the prima facie showing that suitable employment is unavailable, the burden shifts to FMC to show "some form of suitable work is regularly and continuously available" to her. *Id.* at 231. FMC has failed to meet this burden. While FMC's vocational expert testified that there were employment possibilities, most of the jobs he

suggested were either similar in task to the jobs at Super 8 and Wal–Mart that Enger was not physically capable of performing or were jobs that would have required the employer to make special accommodations by equipment (e.g., DataHand[4]) or personnel in order to hire Enger. FMC's expert could not confirm any of the employers already had, or would be willing to make, the necessary accommodations. While the employer need not actually place the claimant in an open job to meet its burden, it must nevertheless demonstrate that "positions were actually available and would have provided Claimant with the opportunity for employment within [her] job restrictions." *Spitzack*, 532 N.W.2d at 76. FMC clearly did not meet this burden, and the Department had substantial evidence to find that it did not.

[¶ 26.] **3. Whether the circuit court erred by failing to remand the case based on its reversal of the Department's determination that Enger was obviously unemployable and based on its determination that the Department did find that a reasonable job search was made.**

[¶ 27.] The Department incorporated its memorandum decision into the findings of fact and conclusions of law by reference as permitted by SDCL 15–6–52(a).[5] FMC claims a conflict between the Department's memorandum decision and its findings of fact and conclusions of law require us to remand on the issue of whether Enger made a reasonable job search. We find this argument without merit.

[¶ 28.] The Department's Conclusion of Law 10 states, "[i]f there is a conflict between the Memorandum Decision and the Findings of Fact and Conclusions of Law, the Memorandum Decision controls." FMC claims that because the memorandum makes no mention that Enger made a reasonable job search, and there are two specific findings and conclusions which so state, this is a conflict.

[¶ 29.] The common dictionary definition of conflict is "a competitive or opposing action of incompatibles." *Webster's New Collegiate Dictionary* 237 (1977). The finding of reasonable job search cannot be incompatible (i.e., in conflict) with the memorandum decision unless the decision specifically found there was NO reasonable job search. *See, e.g., Eichmann v. Eichmann*, 485 N.W.2d 206, 208 (S.D.1992) ("direct contradiction" required remand).

[¶ 30.] The whole point in incorporating the memorandum decision by reference into the findings and conclusions is to prevent inadvertent omissions of findings and conclusions necessary to support the trier of fact's decision. To define "conflict" in such a way that an omission in the memorandum decision invalidates a specific finding and a specific conclusion is an interpretation we will not entertain.

[¶ 31.] We affirm.

[¶ 32.] MILLER, C.J., and SABERS, AMUNDSON and KONENKAMP, JJ., concur.

---

4. DataHand is special adaptive equipment which allows the input of keyboard information using only the fingertips and not the hand or wrist.

5. Supreme Court Rule 81–3, effective July 1, 1981, amended SDCL 15–6–52(a) to allow this Court to consider a memorandum opinion if it was filed and included by reference in the trial court's findings of fact and conclusions of law.