#23736-a-RWS

**2006 SD 16**

IN THE SUPREME COURT

OF THE

STATE OF SOUTH DAKOTA

* * * *

KAMI KUHLE,                                   Claimant and Appellant,

  v.

LECY CHIROPRACTIC,                            Employer and Appellee,
  and
ACUITY,                                       Insurer and Appellee.

* * * *

APPEAL FROM THE CIRCUIT COURT OF
THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

* * * *

HONORABLE MAX GORS
Judge

* * * *

MICHAEL J. SIMPSON of
Julius & Simpson, LLP
Rapid City, South Dakota                      Attorneys appellant.


MICHAEL S. McKNIGHT
LISA HANSEN MARSO of
Boyce, Greenfield, Pashby & Welk, LLP
Sioux Falls, South Dakota                     Attorneys for appellees.

* * * *

CONSIDERED ON BRIEFS
ON JANUARY 9, 2006

OPINION FILED **03/01/06**

#23736

SABERS, Justice

[¶1.]        The South Dakota Department of Labor (Department) determined that Kami Kuhle (Kuhle) was not entitled to workers' compensation benefits from Lecy Chiropractic Clinic (Clinic) because she failed to provide timely notice.  We affirm.

**FACTS**

[¶2.]        Kuhle was thirty-three years old at the time of this hearing.  She attended high school, but only completed the tenth grade.  Kuhle received her general equivalency diploma in 1987 or 1988.  Later, she studied biology at Black Hills State University and phlebotomy at Western Dakota Technical Institute.  Kuhle also obtained a degree as a medical secretary.  She has worked in sales, at a veterinary clinic, and as a floral designer.

[¶3.]        Kuhle began working at the Clinic as a chiropractic assistant in April, 2002.  Her primary duties included gathering patient histories, data entry, and using a massager and ultrasound on patients.  The massager resembles a belt sander and weighs between three and five pounds.  Kuhle used the massager for about two minutes on each patient.  She was forced to lean over the patient during the procedure while the patient was lying on the examination table.  After Kuhle finished with one patient, she would perform the procedure on another patient.  She performed up to twenty of these procedures per day.

[¶4.]        Kuhle began to experience a burning pain in the middle portion of her back, between her shoulder blades, as a result of performing these procedures.  The pain would usually subside in the evening and would be gone by morning.  Kuhle's

-1-

husband, Daryn, testified that she complained about the pain associated with the massaging procedure about once a week.

[¶5.] Doctors Dan and Robin Lecy periodically performed adjustments on Kuhle's back. Both Doctors offered the adjustments free of charge for employees, a service that was usually performed during breaks or at the end of the business day. Kuhle testified that she received adjustments once or twice per month between April and November 2002. However, the medical records only document four treatments of Kuhle during that time period. Although the records contain information that Kuhle was experiencing upper back pain, there is no mention of the massager or that the pain was related to her employment.[1]

[¶6.] On October 25, 2002, Kuhle awoke stiff and sore. She scheduled an appointment with Dr. Dan Lecy that same afternoon. During the treatment, Kuhle felt a pop in her back that was like "nothing that [she] [had] ever felt before." The Clinic record from this date does not indicate that Kuhle informed Dr. Lecy that her pain and discomfort was the result of her employment. However, Dr. Lecy testified that Kuhle mentioned she had been doing landscaping work that month.[2]

[¶7.] Sometime during the drive home, Kuhle's pain became so intense that she was unable to move. Her husband took her to the hospital where she received an injection to relieve the pain. There is no mention of the massager or any work-related injury in the hospital records generated from this visit. Instead, it is noted

---

1. One record indicates the treatment was for pain that Kuhle had been experiencing after walking down the stairs at Mt. Rushmore.

2. On cross-examination, Kuhle testified that she had helped to install a sprinkler system for her property.

that Kuhle's pain started while she had been moving a large television earlier that month.

[¶8.]	The following day, Kuhle received another adjustment from Dr. Dan Lecy.[3]  He believed Kuhle's condition was deteriorating so he sent her to her family physician, Dr. Kevin Weiland.  An MRI revealed that Kuhle suffered a herniated disc.

[¶9.]	Kuhle underwent a diskectomy on November 25, 2002.  She returned to work in January, 2003.  However, she was only able to work on a limited basis, performing primarily office work.

[¶10.]	By February, Kuhle started to consider taking legal action against the Clinic.  She testified that Dr. Seljeskog, who had performed her surgery, implied that her injury may be related to the October 25th adjustment performed by Dr. Dan Lecy.  She also had numerous conversations with her husband about possible claims she may have against the Clinic.  Consequently, Kuhle decided to schedule a visit with Mike Abourezk, a Rapid City attorney.  The meeting took place sometime in mid-February.

[¶11.]	After discussing the potential for a medical malpractice claim, Abourezk advised Kuhle to file a workers' compensation claim.  Thereafter, Kuhle discussed the possibility of a workers' compensation claim with Dr. Robin Lecy.  Dr.

---

3.	The record does not indicate that Kuhle mentioned anything about her injury being work related at this appointment.

Lecy informed her that he did not believe she had a workers' compensation claim because her injury was not work related.[4]

[¶12.]        Kuhle completed her first report of injury on March 13, 2005. In the report, she listed October 1, 2002, as her date of injury. The Clinic denied her request for benefits, alleging that sufficient notice of injury had not been given in accordance with SDCL 62-7-10.

[¶13.]        After a hearing, the Department issued a decision in favor of the Clinic. The administrative law judge (ALJ) found that:

> Given Claimant's age and intelligence, Claimant, as a reasonable person, should have recognized the nature, seriousness and probable compensable character of her injury by October 2002. At the very latest, Claimant should have provided written notice in mid February 2003 when she believed that her back problems were all related to her work activities of using the massager.

The ALJ also found Doctors Dan and Robin Lecy more credible than Kuhle.

[¶14.]        Kuhle appealed the Department's decision to the circuit court. After oral argument, the court affirmed the Department's decision and adopted it in its entirety. Kuhle raises the following issue on appeal:

> **Whether the Department's determination that Kuhle failed to give timely notice is clearly erroneous or affected by error of law.**

---

4.      The date on which Dr. Lecy was informed of Kuhle's claim is disputed. According, to Kuhle, she contacted Dr. Lecy sometime in late February, only a day or two after speaking with Abourezk. Dr. Lecy recalls the conversation taking place in early March. The Department apparently found Dr. Lecy's testimony more credible and adopted the early March time period.

**Standard of Review**

[¶15.]     We review appeals from administrative decisions in the same manner as the circuit court.  Clausen v. Northern Plains Recycling, 2003 SD 63, ¶7, 663 NW2d 685, 687 (citing Schuck v. John Morrell & Co., 462 NW2d 894, 896 (SD 1995)).  "Our standard of review is controlled by SDCL 1-26-37."  Kassube v. Dakota Logging, 2005 SD 102, ¶25, 705 NW2d 461, 465.  The Department's factual findings and credibility determinations are reviewed under the clearly erroneous standard.  Enger v. FMC, 1997 SD 70, ¶10, 565 NW2d 79, 83 (citing Tieszen v. John Morrell & Co., 528 NW2d 401, 403-04 (SD 1995)).  We will reverse those findings only if we are definitely and firmly convinced a mistake has been made.  Gordon v. St. Mary's Healthcare Center, 2000 SD 130, ¶16, 617 NW2d 151, 157.

[¶16.]     Questions of law are reviewed *de novo.  Enger*, 1997 SD 70, ¶10, 565 NW2d at 83 (additional citations omitted).  Mixed questions of law and fact are also fully reviewable.  *Id.*  Ultimately, the claimant retains the burden of proving all facts essential to compensation.  *Clausen*, 2003 SD 63, ¶7, 663 NW2d at 687 (citing Day v. John Morrell & Co., 490 NW2d 720, 724 (SD 1992)).

**Decision**

[¶17.]     SDCL 62-7-10 provides:

> An employee who claims compensation for an injury shall immediately, or as soon thereafter as practical, notify the employer of the occurrence of the injury.  Written notice of the injury shall be provided to the employer no later than three business days after its occurrence.  The notice need not be in any particular form but must advise the employer of when, where, and how the injury occurred.  Failure to give notice as required by this section prohibits a claim for compensation under this title unless the employee or the employee's representative can show:

> (1) The employer or the employer's representative had actual knowledge of the injury; or
>
> (2) The employer was given written notice after the date of the injury and the employee had good cause for failing to give written notice within the three business-day period, which determination shall be liberally construed in favor of the employee.

"The purpose of the written notice requirement is to give the employer the opportunity to investigate the injury while the facts are accessible." Shykes v. Rapid City Hilton Inn, 2000 SD 123, ¶24, 616 NW2d 493, 499. SDCL 62-7-10 mandates that notice to the employer of an injury is a condition precedent to compensation. *Id.*

[¶18.]    Claimant carries the burden of proving that he or she provided timely notice to the employer, or that either (1) the employer had actual notice,[5] or (2) that good cause exists for failing to give written notice within the three business-day period, which determination shall be liberally construed in favor of the employee. SDCL 62-7-10; *Clausen*, 2003 SD 63, ¶8, 663 NW2d at 687 (citing Miller v. Lake Area Hospital, 1996 SD 89, ¶11, 551 NW2d 817, 819). However, it is well settled that "the time period for notice or claim does not begin to run until the claimant, as a reasonable person, should recognize the nature, seriousness and probable compensable character of [the] injury or disease."[6] *Clausen*, 2003 SD 63, ¶13, 663

---

5.    Kuhle originally claimed that the Clinic had actual notice of her injury. However, it appears she abandoned that argument on appeal.

6.    We have held that misdiagnosis or a misleading diagnosis can toll the date of an injury. *See* Vu v. John Morrell & Co., 2000 SD 105, ¶29, 615 NW2d 171, 177; Bearshield v. City of Gregory, 278 NW2d 164, 166 (SD 1979); Pirrung v. American News Company, 75 SD 44, 67 NW2d 748 (1954).

NW2d at 689 (quoting 2B Arthur Larson, Larson's Workmen's Compensation Law, § 78.41(a) at 15-185-6 (1995)). Whether the conduct in question was reasonable is based on the claimant's education and intelligence, not on the hypothetical reasonable person familiar to tort law. *Shykes*, 2000 SD 123, ¶42, 616 NW2d 493, 502. However, the standard creates an objective, not subjective test. *Id.* ¶43 ("The standard is based on an objective reasonable person with the same education and intelligence as the claimant's").

[¶19.]     In the present case, the Department found that Kuhle, given her education and intelligence, should have realized the compensable nature of her injury by October of 2002 or, at the very latest, February of 2003. Kuhle testified that she complained to her husband of work related pain and discussed possible legal claims for months. She underwent back surgery and missed a substantial amount of work. However, she did not notify the Clinic of her claim until late February or early March of 2003. During cross-examination, Kuhle admitted that she had known even before February of 2003 that her injury was related to the massager at work. Kuhle's admission is dispositive of this issue.[7] Therefore, she has failed to show where the Department erred.

[¶20.]     Affirmed.

[¶21.]     GILBERTSON, Chief Justice, and KONENKAMP, ZINTER and MEIERHENRY, Justices, concur.

---

7.     Kuhle argues she could not have known whether she had a malpractice or workers' compensation claim. Even if we were to accept that argument, it misses the point because the test depends on the information available to her, not what she did or did not do with that information.