#23704-a-KEAN, Circuit Judge

**2006 SD 52**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKTOTA

\* \* \* \*

IN THE MATTER OF
STEVEN J. TINKLENBERG,                  Appellant.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT
OF THE SIXTH JUDICIAL CIRCUIT
HUGHES COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE MAX A. GORS
JUDGE

\* \* \* \*

PATRICIA de HUECK of
deHueck Law Firm
Pierre, South Dakota

SHANNON RIGSBY of
Samp Law Office
Sioux Falls, South Dakota                  Attorneys for appellant.

NEIL FULTON of
May, Adam, Gerdes & Thompson
Pierre, South Dakota                  Attorneys for appellee.

\* \* \* \*

ARGUED
MARCH 23, 2006

OPINION FILED **06/14/06**

#23704

KEAN, Circuit Judge

[¶1.]       Steven Tinklenberg (Tinklenberg) appeals the decision of the South

Dakota Division of Insurance (Division) to revoke his insurance producer's license.

The circuit court affirmed the revocation making additional findings of fact and

conclusions of law and rejecting Tinklenberg's claim of improper ex parte

communications within the Division.  Tinklenberg appeals.  We affirm.

FACTS AND PROCEDURE

[¶2.]       Tinklenberg became a licensed insurance producer in the State of

South Dakota in 1979.  In 1980 Tinklenberg sold a life insurance policy from

Pennsylvania Life Insurance Company (Pennsylvania Life) to Albert Klein (Albert).

Because the policy was designed to allow money to pass outside the insured's estate,

Pennsylvania Life encouraged making someone other than the insured the owner of

the policy.  Albert designated his sister, Mary Klein (Mary), as the owner.  The

beneficiaries of the policy were Mary and his two other siblings.  The death benefit

under the policy was $25,000.

[¶3.]       Albert and Mary were raised on a farm in Waverly, South Dakota.

Mary was born in 1912 and was the oldest of six children.  Albert was born in 1926

and was the youngest child.  Albert and Mary lived their entire lives together, first

on the family farm and then in an apartment in Watertown, South Dakota for the

last few years of their lives.  Mary was a caregiver for Albert.  Albert was physically

disabled from farm injuries and arthritis and he needed Mary's assistance with his

daily needs, including dressing.  In 1961 Albert was committed for a time to the

State Hospital in Yankton, South Dakota.  He was diagnosed with schizophrenia

and with having limited intelligence, likely in the mild mental retardation range. A psychological evaluation in 1998 confirmed this diagnosis.

[¶4.]     Tinklenberg resigned as an agent for Pennsylvania Life in 1984. However, he continued to assist Albert with various matters. Albert's life insurance policy included a waiver of premium for disability. Albert paid the first premium and was thereafter considered disabled. He periodically had to verify his continued disability in order to receive the premium waiver. Tinklenberg assisted Albert with this paperwork. Tinklenberg also attempted to assist Albert and Mary in getting long term care insurance. When Albert had problems with receiving disability checks from another unrelated disability policy, Tinklenberg assisted him. Eventually the disability checks were sent directly to Tinklenberg who forwarded them to Albert upon receipt. Evidence was introduced at the hearing that Albert made numerous calls to Tinklenberg over the years both at home and at the office.

[¶5.]     Tinklenberg claims that during a visit to the farm in late 1993 Albert said he wanted Tinklenberg to have his life insurance policy with Pennsylvania Life. Tinklenberg testified that he obtained the necessary forms from Pennsylvania Life. Tinklenberg testified that he returned to the farm on October 29, 1993, where the form transferring ownership was signed by Mary and witnessed by Albert. Tinklenberg submitted the form to Pennsylvania Life. It was approved by the company and ownership and beneficiary designations were changed to Tinklenberg.

[¶6.]     In February 1999 Albert and Mary's niece, Mary Ann Brennan (Mary Ann) was appointed conservator over Albert's affairs. After her appointment, Albert told Mary Ann that he had two disability policies and a life insurance policy. He gave Tinklenberg's phone number to Mary Ann. In March 1999 Mary Ann

contacted Tinklenberg to discuss Albert's insurance. Mary Ann testified that Tinklenberg told her that the life insurance policy was in effect and that Albert's siblings were named as beneficiaries. Mary Ann contacted Tinklenberg again on or about February 16, 2000, to notify him that Albert's health was deteriorating. Mary Ann testified that during the conversation Tinklenberg confirmed the status of the policy and that the policy's beneficiaries were Albert's siblings. The administrative law judge (ALJ) found that Tinklenberg deliberately concealed the fact that ownership of the policy had been transferred to him in 1993 and that he had named himself as the beneficiary. On February 25, 2000, Mary Ann called to notify Tinklenberg that Albert had died. Mary Ann testified that Tinklenberg said that he would start the paperwork for the payment of the death benefit proceeds. Tinklenberg did not tell Mary Ann that he was both the owner and beneficiary of the policy. He did not attend Albert's funeral or send any acknowledgment to the family.

[¶7.]        Shortly after Albert's death, Tinklenberg submitted a death benefit claim to Pennsylvania Life. On March 23, 2000, Tinklenberg received a check from Pennsylvania Life for $34,398.96, after the deduction of a remaining balance of $1,170.52 from a loan Tinklenberg had earlier taken against the policy. Tinklenberg deposited the check on March 30, 2000. Tinklenberg paid Albert's funeral expenses in the amount of $6,766.58 without telling the family. The family was later notified by the funeral home that the bill had been paid. When Albert's family did not receive any proceeds from the life insurance policy, Mary Ann contacted Attorney Tom Burns (Burns) who spoke with Tinklenberg to find out the necessary steps to collect on the policy. Tinklenberg did not disclose to Burns his

ownership of the policy, but instead referred Burns to Pennsylvania Life. When Burns contacted Pennsylvania Life, he was notified that Tinklenberg was the owner of the policy and had already collected the death benefit proceeds.

[¶8.] Burns obtained a copy of the form changing ownership and beneficiary from Pennsylvania Life and showed it to Mary. While it appeared to have Mary's signature, she did not remember signing it. She claimed that she never had an intention to transfer ownership to Tinklenberg. A complaint against Tinklenberg was filed with the Division. The Division began an investigation which eventually led to the criminal prosecution of Tinklenberg for grand theft. He was found not guilty in the criminal case.

[¶9.] The Division commenced an administrative proceeding to revoke Tinklenberg's license. The Division alleged that Tinklenberg converted a life insurance policy and death benefit proceeds belonging to Mary and in doing so failed to meet the standards for licensure. It further alleged that Tinklenberg gave Mary Ann the false impression that the Klein family would receive the death benefit proceeds of the policy. During the investigation, an inquiry was made regarding Tinklenberg's residence. Tinklenberg verified his address as 747 South Third Avenue, Sioux Falls, South Dakota. However, a letter sent to that address was returned to the Division as undeliverable and the post office reported a current address of 3120 East Claudette Drive, Sioux Falls, South Dakota. The Division claimed that Tinklenberg failed to provide notice of his change of address as required by statute.

[¶10.] A contested hearing was held on October 16, 17, and November 10, 2003. The ALJ proposed the revocation of Tinklenberg's insurance producers

license. The Division adopted the ALJ's proposed findings of fact, conclusions of law and decision and ordered the revocation of Tinklenberg's license. Tinklenberg appealed the Division's decision to the circuit court. On appeal to the circuit court, Tinklenberg raised a new issue alleging ex parte contact by the acting Division Director and Division personnel working on Tinklenberg's case. The circuit court held a supplemental evidentiary hearing on this issue. The circuit court affirmed the Division's decision. Tinklenberg appeals.

## STANDARD OF REVIEW

[¶11.] Our standard of review of an administrative appeal is the same as that of the circuit court. Kuhle v. Lecy Chiropractic, 2006 SD 16, ¶15, 711 NW2d 244, 247 (citing Clausen v. Northern Plains Recycling, 2003 SD 63, ¶7, 663 NW2d 685, 687 (additional citation omitted)). "'Our standard of review is controlled by SDCL 1-26-37.'" *Kuhle*, 2006 SD 16, ¶15, 711 NW2d at 247 (quoting Kassube v. Dakota Logging, 2005 SD 102, ¶25, 705 NW2d 461, 465). The Division's factual findings and credibility determinations are reviewed under the clearly erroneous standard. *Kuhle*, 2006 SD 16, ¶15, 711 NW2d at 247 (citing Enger v. FMC, 1997 SD 70, ¶10, 565 NW2d 79, 83 (citing Tieszen v. John Morrell & Co., 528 NW2d 401, 403-04 (SD 1995))). "We will reverse those findings only if we are definitely and firmly convinced a mistake has been made." *Kuhle,* 2006 SD 16, ¶15, 711 NW2d at 247 (citing Gordon v. St. Mary's Healthcare Center, 2000 SD 130, ¶16, 617 NW2d 151, 157). "Questions of law are reviewed *de novo.*" *Kuhle,* 2006 SD 16, ¶16, 711 NW2d at 247 (citing *Enger*, 1997 SD 70, ¶10, 565 NW2d at 83 (additional citations omitted)). "Mixed questions of law and fact are also fully reviewable." *Id.* In matters involving the revocation of a professional license, the agency's burden of

proof is clear and convincing evidence.  In re Setliff, 2002 SD 58, ¶13, 645 NW2d 601, 605.

## DECISION AND ANALYSIS

### ISSUE ONE

[¶12.]      **Whether it was error to revoke Tinklenberg's license for a violation of SDCL 58-30-106 when the statute was repealed before administrative proceedings to revoke his license were commenced.**

[¶13.]      Tinklenberg's alleged violations of SDCL 58-30-106 took place between December 1993 when he transferred the policy to himself and March 2000 when he collected the death benefit proceeds and kept them.  The administrative proceeding to revoke Tinklenberg's license was commenced in January 2002.  SDCL 58-30-106 was repealed by the South Dakota Legislature effective July 1, 2001, prior to the commencement of the administrative action, but after the alleged violation of the statutory section.  *See* 2001 SDSessLaws ch 286 § 280.  Tinklenberg asserts the repeal of the statute cancelled any action against him pursuant to the statute and that no savings clause revives SDCL 58-30-106.  The Division argues that the general saving clause of SDCL 2-14-18 allows a proceeding pursuant to the statute, even though it has been repealed, as the conduct at issue had occurred while the statute was in force and because a penalty is involved.  Alternatively, the Division argues that SDCL 58-30-106 was simultaneously re-enacted by SDCL 58-30-167.  This issue involves a question of law which we review de novo.

[¶14.]      Prior to its repeal, SDCL 58-30-106 provided:

> The director may suspend for not more than twelve
> months, or may revoke or refuse to continue any license
> issued under this chapter, or any surplus lines broker's
> license if, after hearing held on not less than twenty days'
> advance notice of such hearing and of the charges against

the licensee given to the licensee and to the insurers represented by such licensee or to the appointing agent of a soliciting agent, he finds that as to the licensee any one of the following causes exists:

(1) Any cause for which issuance of the license could have been refused had it then existed and been known to the director;

(2) Obtaining or attempting to obtain any such license through fraud or through willful misrepresentations or misstatements as to any material matter;

(3) Violation of or noncompliance with an applicable provision of this title, or for willful violation of any lawful rule, regulation, or order of the director;

(4) Misappropriation or conversion to his own use, or illegal withholding, of moneys or property belonging to policyholders, or insurers, or beneficiaries, or others and received in conduct of business under the license;

(5) Conviction, by final judgment, of a crime involving moral turpitude;

(6) For material misrepresentation of the terms of any insurance contract or proposed insurance contract; or

(7) If in the conduct of his affairs under the license the licensee has used fraudulent or dishonest practices, or has shown himself to be incompetent or untrustworthy.

[¶15.] "It is general basic law that the effect of the repeal of a statute, where neither a saving clause within the repealing statute itself nor a general saving statute exists to prescribe the governing rule for the effect of the repeal, is to destroy the effectiveness of the repealed act in futuro and to divest the right to proceed under the statute which, except as to proceedings passed and closed, is

considered as if it had never existed."  State Highway Commission v. Wieczorek, 248 NW2d 369, 372 (SD 1976).  The legislature did not enact a specific savings clause as to SDCL 58-30-106.  Therefore, we must consider whether South Dakota's general savings cause contained in SDCL 2-14-18 preserved SDCL 58-30-106 as to this administrative proceeding against Tinklenberg.  SDCL 2-14-18 provides:

> The repeal of any statute by the Legislature shall not have the effect to release or extinguish any *penalty*, forfeiture, or liability incurred under such statute unless the repealing act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of *sustaining* any proper action or prosecution for the enforcement of such *penalty*, forfeiture, or liability. (emphasis added)

[¶16.]    Black's Law Dictionary 1168 (8th ed 2004) defines "penalty" as:

> [p]unishment imposed on a wrongdoer, usu. in the form of imprisonment or fine; esp., a sum of money exacted as punishment for either a wrong to the state or a civil wrong (as distinguished from compensation for the injured party's loss).  Though usu. for crimes, penalties are also sometimes imposed for civil wrongs.

Under the Division's administrative rules, sanctions which may be imposed for violations of the insurance code are characterized as a "penalty."  ARSD 20:06:01:02 provides:

> In determining the *penalty* for a violation of an insurance law by an agent, broker, or insurer, the director may consider, but is not limited to, the following factors:
>
> (1)    Prior violations of the law by the agent, broker, or insurer;
>
> (2)    Number of violations of a statute;
>
> (3)    Number of statutes violated;
>
> (4)    Penalties assessed against other agents, brokers, or insurers for the same violations;

(5)  Magnitude of the harm to the public and insured; and

(6)  Any mitigating circumstances.

(emphasis added).

[¶17.]  There can be little question that the revocation of a professional license is a serious matter with significant consequences. *Setliff,* 2002 SD 58, ¶23, 645 NW2d at 608 (citing Bruggeman v. S.D. Chem. Dependency Counselor Certification Bd., 1997 SD 132, ¶12, 571 NW2d 851, 853 (additional citation omitted)). This Court has characterized the revocation of a resident insurance agent's license as a "penalty." Kent v. Lyon, 1996 SD 131, ¶53, 555 NW2d 106, 117. We conclude that the revocation of Tinklenberg's license for his misconduct is a penalty for the purposes of SDCL 2-14-18. Therefore, it was not error for the Division to seek revocation of Tinklenberg's license under the authority of SDCL 58-30-106,[1] since his conduct occurred during the time when the statute was in force.

[¶18.]  Our conclusion has support from other courts which have addressed this issue. The cases are summarized thus:

> To alleviate the hardship and to rectify the injustice of the common-law rules of construction and interpretation as they prescribe the effect of the repeal of a statute, a majority of the jurisdictions have enacted general savings statutes with the express purpose of achieving the continuation of repealed statutes in respect to past activity and pending legal actions. … Although these general savings statutes have been designated as mere rules of construction to be applied only to resolve a question of legislative intent, *the prevalent and more*

---

1.  It is not necessary for the Court to address the Division's alternative argument that SDCL 58-30-106 was repealed and re-enacted as SDCL 58-30-167.

> *favored view is to construe the savings provisions as*
> *positive legislation which should be given the effect as*
> *though they were incorporated into every future enactment*
> *involving a substantive right.*
>
> Where a statute is repealed, a general saving statute
> operates to save any substantive right of a private nature,
> liability, right of action, penalty, forfeiture, or offense
> which has accrued under the repealed statute.
> *Consequently, any action predicated upon the repealed*
> *statute may be commenced and prosecuted to a conclusion*
> *under the provisions of the repealed act.*

1A Norman J. Singer, Sutherland Statutory Construction §23:38 (6th ed) (emphasis added).

[¶19.] Further, there is a South Dakota decision which discussed the general savings clause in relation to a "liability." In Schultz v. Jibben, 513 NW2d 923 (SD 1994), a vendor under a contract for deed commenced an action to foreclose the interest of the purchasers and their assignee. The assignee counterclaimed for an equitable adjustment of the contract referring to SDCL 21-50-2. However, this statute was repealed after execution of the original contract for deed. In denying application of the general savings statute to preserve the right of equitable adjustment for the assignees, we determined that the right of equitable adjustment was not a liability and therefore could not be saved under SDCL 2-14-18. Yet, we considered the preservation of a liability under this general savings statute, if the liability existed prior to the repeal and was not mentioned in the repealed statute, by writing: "[T]he repeal of a statute does not bar actions commenced after the repeal *if predicated upon liability which accrued when the act was in force*[.]"[2] *Id.* at

---

2. Therefore, the claim by Tinklenberg that the word "sustaining" excludes proper action or prosecution which has not been started is rejected.

925 (emphasis in original) (citing Colorado v. McMillin, 150 Colo 23, 370 P2d 435 (1962)).

ISSUE TWO

[¶20.]     **Whether the circuit court erred in finding that the Division's decision was not made under irregularities in procedure.**

[¶21.]     Tinklenberg claims that ex parte communications in violation of SDCL 1-26-26 occurred with the Division's Director Wendal Malsam (Malsam) while Tinklenberg's case was pending. Malsam issued the final decision adopting the ALJ's proposed revocation of Tinklenberg's license. The circuit court allowed Tinklenberg to present additional evidence to prove his allegations of irregularities. The circuit court heard testimony on February 8 and March 7, 2005, from five witnesses from the Division. After hearing the testimony, the circuit court made specific findings of fact and conclusions of law. The circuit court concluded that Tinklenberg failed to prove that ex parte communications occurred.

[¶22.]     SDCL 1-26-26 provides:

> Unless required for the disposition of ex parte matters authorized by law, members of the governing board or officers or employees of an agency assigned to render a decision or to make findings of fact and conclusions of law in a contested case shall not communicate, directly or indirectly, in connection with any issue of fact, with any person or party, nor, in connection with any issue of law, with any party or his representative, except upon notice and opportunity for all parties to participate. If one or more members of a board or commission or a member or employee of an agency, who is assigned to render a decision in a contested case, took part in an investigation upon which the contested case is based, he shall not participate in the conduct of the hearing nor take part in rendering the decision thereon, but he may appear as a witness and give advice as to procedure. If, because of such disqualification, there is no person assigned to conduct the hearing or render the decision, the agency

shall appoint someone pursuant to § 1-26-18.1 to fulfill those duties. A person assigned to render a decision:

  (1) May communicate with other members of the agency; and

  (2) May have the aid and advice of one or more personal assistants.

[¶23.] "'A fair trial in a fair tribunal is a basic requirement of due process.'" Strain v. Rapid City Sch. Bd., 447 NW2d 332, 336 (SD 1989) (quoting In re Murchison, 349 US 133, 136, 75 SCt 623, 625, 99 LEd 942, 946 (1955)). "This applies to administrative agencies which adjudicate as well as to courts." *Strain*, 447 NW2d at 336 (citing Gibson v. Berryhill, 411 US 564, 93 SCt 1689, 36 LEd2d 488 (1973)). "'Administrative officials are presumed to be objective and capable of judging controversies fairly on the basis of their own circumstances.'" Voeltz v. John Morrell & Co., 1997 SD 69, ¶11, 564 NW2d 315, 317 (quoting Northwestern Bell Tel. Co., Inc. v. Stofferahn, 461 NW2d 129, 133 (SD 1990)). The presumption may be overcome when the record establishes either 1) actual bias, or 2) the existence of circumstances that lead to the conclusion that an unacceptable risk of actual bias or prejudgment inhered in the proceeding. *Id.* "Pre-decision involvement 'is not enough to overcome the presumption of honesty and integrity in policy makers with decisionmaking power.'" *Strain*, 447 NW2d at 336-37 (quoting Hortonville Dist. v. Hortonville Ed. Assoc., 426 US 482, 497, 96 SCt 2308, 2316, 49 LEd2d 1, 11-12 (1976)).

[¶24.] The circuit court made specific findings of fact regarding the testimony on this issue and determined that the prosecution and decision making functions were kept separate within the Division. It found that Tinklenberg failed to prove

that ex parte communications occurred with Malsam and that Tinklenberg had not overcome the presumption that Malsam acted in good faith. "'Determining the credibility of the witnesses is the role of the factfinder.'" Fall River County v. SD Dept. of Rev., 1996 SD 106, ¶22, 552 NW2d 620, 626 (quoting Mash v. Cutler, 488 NW2d 642, 653-54 (SD 1992) (additional citation omitted)). Tinklenberg has not shown that the circuit court's findings of fact are clearly erroneous. The trial court did not err in concluding that Tinklenberg failed to show a violation of SDCL 1-26-26.

ISSUE THREE

[¶25.] **Whether the Division erred in revoking Tinklenberg's insurance producer license.**

[¶26.] The circuit court affirmed the Division's decision and adopted its findings of fact and conclusions of law. In addition, the circuit court entered its own findings of fact and conclusions of law. Tinklenberg attacks the findings of fact and argues the Division's decision is not supported by clear and convincing evidence in the record.

[¶27.] The Division's factual findings and credibility determinations are reviewed under the clearly erroneous standard. Kuhle, 2006 SD 16, ¶15, 711 NW2d at 247 (citations omitted). "We will reverse those findings only if we are definitely and firmly convinced a mistake has been made." Id. While Tinklenberg advocates for a different interpretation of the testimony presented, he has not shown that the ALJ's findings of fact are clearly erroneous. The ALJ heard the testimony and had the opportunity to judge the credibility of the witnesses. Credibility was an important aspect of this case. For example, Mary Ann testified that Tinklenberg

told her during their phone conversations that Albert's siblings were named as beneficiaries of the life insurance policy. Tinklenberg denied telling her the siblings were the beneficiaries. The ALJ found that Tinklenberg deliberately concealed the fact that the policy had been transferred to himself and that he was the beneficiary. "'[D]ue regard shall be given to the opportunity of the agency to judge the credibility of the witness.'" Engel v. Prostrollo Motors, 2003 SD 2, ¶29, 656 NW2d 299, 303 (quoting Bonnett v. Custer Lumber Corp, 528 NW2d 393, 396 (SD 1995)). Tinklenberg has not shown that the findings of fact are clearly erroneous. Reviewing the record as a whole, there is clear and convincing evidence to support the revocation of Tinklenberg's license for violating SDCL 58-30-106.

[¶28.]     Affirmed.

[¶29.]     GILBERTSON, Chief Justice, and SABERS, KONENKAMP and MEIERHENRY, Justices, concur.

[¶30.]     KEAN, Circuit Judge, for ZINTER, Justice, disqualified.