#24004-a-RWS

**2006 SD 96**

IN THE SUPREME COURT
OF THE
STATE OF SOUTH DAKOTA

\* \* \* \*

DONALD PAUL HUBER,  Plaintiff and Appellant,

v.

DEPARTMENT OF
PUBLIC SAFETY  Defendant and Appellee.

\* \* \* \*

APPEAL FROM THE CIRCUIT COURT OF
THE SECOND JUDICIAL CIRCUIT
MINNEHAHA COUNTY, SOUTH DAKOTA

\* \* \* \*

HONORABLE GENE PAUL KEAN
Judge

\* \* \* \*

RICHARD A. ENGELS
Engels Law Office, P.C.
Sioux  Falls, South Dakota  Attorneys for plaintiff
and appellant.


LAWRENCE E. LONG
Attorney General

ANN C. MEYER
Assistant Attorney General
Pierre, South Dakota  Attorneys for defendant
and appellee.

\* \* \* \*

CONSIDERED ON BRIEFS
ON OCTOBER 2, 2006

OPINION FILED **11/01/06**

#24004

SABERS, Justice

[¶1.]        Donald Huber (Huber) appeals the Department of Public Safety's (Department) decision that he is unlicensable under SDCL 32-12-35.  He also alleges the circuit court abused its discretion when it did not grant a hearing to take additional evidence during his appeal.  We affirm.

## FACTS

[¶2.]        In September of 2001, Huber struck and killed two pedestrians when he "blacked out" while driving.[1]  This accident was originally attributed to narcolepsy.  The Department sent Huber a Notice of Driver Evaluation Request in order to review his ability to drive.  The medical evidence provided by Dr. Richard W. Friess indicated Huber should not drive until they could prove a similar event would not occur.  The Department canceled his driver's license on September 28, 2001.

[¶3.]        On October 5, 2001, Huber sent the Department an evaluation from Dr. Mark W. Mahowald.  The doctor stated that Huber's episode was of "unclear etiology" but thought there should be "no limitation placed upon his ability to operate a motor vehicle safely."  Huber's driving status was reevaluated on October 30, 2001, and the Department granted him a temporary driver's license for six months.

---

1.    The accident resulted in three cases previously before this Court.  *See* Gloe v. Union Ins. Co., 2005 SD 30, ¶¶1-2, 694 NW2d 252, 254-55; Gloe v. Iowa Mut. Ins. Co., 2005 SD 29, ¶1, 694 NW2d 238, 239-40; Nelson v. Farmer Mut. Ins. Co. of Nebraska, 2004 SD 86, ¶2, 684 NW2d 74-75.

[¶4.]    On December 14, 2001, the Department canceled Huber's driver's license.  Huber requested a hearing and submitted medical evaluations from Dr. Friess, Dr. Hurley, and Dr. Mahowald.  The administrative law judge found that under SDCL 32-12-35 Huber's operation of a vehicle was "inimical to public safety and/or welfare."  On February 22, 2002, the Director of Driver Licensing, Cynthia D. Gerber (Gerber), accepted this decision and denied Huber a license until he went twelve months without any episodes and had medical documentations that his conditions were controlled by medication.  Huber did not appeal this decision.

[¶5.]    In July of 2002, Huber again blacked out on his way to work, while his child was in the car.  Even though Huber was required under the February decision to remain episode free for twelve months, he again requested a six-month temporary license in May 2003.  In support of this request, Huber submitted an evaluation by Dr. Jerome W. Freeman.  This evaluation stated the cause of both accidents may have been cough syncope[2] and not narcolepsy or seizures as previously thought.  Dr. Freeman thought the likelihood of reoccurring episodes would be reduced if Huber stopped smoking.

---

2.    Cough syncope is:

> a temporary loss of consciousness that may be induced by a severe spasm of coughing.  This is the result of the high pressure that may be induced in the chest . . . by such a spasm, which prevents the return of blood to the heart.  The veins in the neck begin to bulge and the blood pressure falls; this may so reduce the blood flow to the brain that the individual feels giddy and may then lose consciousness.

Black's Medical Dictionary 168 (41st ed 2006).

[¶6.]     In response to Huber's temporary license request, the Department wrote a letter requiring him to provide more information. Specifically, the Department told Huber: 1) there was no medical report, as required by the February 2002 decision, that indicated the condition was controlled by medication; 2) there was no statement that indicated Huber did not have narcolepsy or seizures using the reasonable medical certainty standard; and 3) Huber had not provided confirmation he had ceased smoking or his black outs had been eliminated. Huber responded by again requesting a six-month temporary driver's license and sending another evaluation from Dr. Freeman. In this evaluation, Dr. Freeman stated with reasonable medical certainty Huber did not have seizures or narcolepsy, Huber has not had anymore episodes of cough syncope, and Huber continued to smoke. The Department informed Huber that Dr. Freeman's evaluation did not confirm that Huber would not have any episodes in the future.

[¶7.]     Huber again sent a letter requesting reinstatement of his license, either completely or with six-month reevaluations. Attached to this letter was another medical statement from Dr. Freeman. Dr. Freeman stated he "[did] not feel that [Huber] has a likelihood of recurrent spells of loss of consciousness." In this medical statement, Dr. Freeman reported Huber told him that he had quit smoking. The Director of Driver Licensing told Huber that he had failed to provide medical documentation that he had quit smoking and Huber had continued to drive despite having his license cancelled.

[¶8.]     On April 5, 2005, Huber requested a hearing. On May 24, 2005, the hearing was held before administrative law judge (ALJ), Julie M. Johnson. After

the hearing, both Huber and the Department submitted briefs, proposed findings of fact, and conclusions of law. The ALJ created a proposed decision, findings of fact and conclusions of law that recommended the Department should not issue a driver's license to Huber, nor restore his license based on SDCL 32-12-35. She forwarded the proposed decision to the Secretary of the Department of Public Safety, Tom Dravland. On July 5, 2005, Secretary Dravland accepted the ALJ's proposed recommendation.

[¶9.] Huber appealed the decision to the circuit court. Both parties briefed the issues, but neither party requested permission to provide additional evidence. The circuit court affirmed the Department's decision. Huber appeals and raises three issues.[3] He alleges the evidence does not support the decision to deny his license under SDCL 31-12-35, that the procedural process of SDCL 1-26-24 was not followed at the administrative level and the circuit court abused its discretion in failing to admit additional evidence.

## STANDARD OF REVIEW

[¶10.] In appeals from administrative agencies, "[o]ur standard of review is controlled by SDCL 1-26-37." Kuhle v. Lecy Chiropractic, 2006 SD 16, ¶15, 711 NW2d 244, 247 (quoting Kassube v. Dakota Logging, 2005 SD 102, ¶25, 705 NW2d 461, 465). "When a circuit court has reviewed an administrative agency's decision, we review the agency's decision unaided by any presumption that the circuit court's

---

3. Huber raises four issues in his brief; however, issues one and two can be consolidated into one issue and will be discussed as one issue in this opinion.

decision was correct." Meligan v. Dept. of Revenue and Regulation, 2006 SD 26, ¶13, 712 NW2d 12, 17 (quoting *Kassube*, 2005 SD 102, ¶25, 705 NW2d at 465). "The Department's factual findings and credibility determinations are reviewed under the clearly erroneous standard." *Kuhle*, 2006 SD 16, ¶15, 711 NW2d at 247 (citing Enger v. FMC, 1997 SD 70, ¶10, 565 NW2d 79, 83) (additional citations omitted). "Questions of law are reviewed de novo." *Id.* ¶16.

[¶11.] **1. Whether SDCL 32-12-35 may be used to deny Huber a license.**

[¶12.] Huber makes several arguments that it was inappropriate for the Department to deny him licensure. He claims that the Department erred under all six subsections of SDCL 1-26-36, namely that the factual determinations were clearly erroneous, arbitrary and capricious, and constitute an abuse of discretion. He claims the facts the Department relied on are no longer present, and his current situation does not qualify for denial of his license. His main contention is that the Department cannot use SDCL 32-12-35 to deny licensure when more specific statutes apply to his factual situation. SDCL 32-12-35 provides, "[t]he Department of Public Safety shall not issue any license under this chapter to any person when the department has good cause to believe that the operation of a motor vehicle on the highways by such person would be inimical to public safety or welfare."

[¶13.] In contrast, Huber claims there are more specific statutes that apply to these facts. Specifically, SDCL 32-12-49(3)[4] and SDCL 32-12-32[5] prevent licensure if a person is incompetent to drive due to a mental or physical condition. Huber claims the Department is essentially arguing that he is physically or mentally incapable of driving, but cannot meet the tests under the specific statutes. According to Huber, the Department is impermissibly relying on the "catch-all" language of SDCL 32-12-35 to deny him a license.

[¶14.] This is a question of statutory interpretation. "Statutes are to be construed to give effect to each statute [ ] so as to have them exist in harmony. It is a fundamental rule of statutory construction that the intention of the law is to be primarily ascertained from the language expressed in the statute." State v. $1,010 in American Currency, 2006 SD 84, ¶8, 722 NW2d 92, 94 (citing *In re* Estate of

---

4. SDCL 32-12-49 reads in relevant part:

    The secretary of the Department of Public Safety may suspend, revoke, or cancel the driving privilege or license of a person after opportunity for hearing pursuant to chapter 1-26 if hearing is demanded, upon a showing by its records or other sufficient evidence that the licensee:
    . . .
    (3) Is physically or mentally incompetent to drive a motor vehicle.

5. SDCL 32-12-32 provides:

    The Department of Public Safety may not issue any license under this chapter to any person who is physically or mentally incapable to drive. The Department of Public Safety may promulgate rules, pursuant to chapter 1-26, to establish criteria for determining an individual's physical or mental capability to drive.

Meland, 2006 SD 22, ¶6, 712 NW2d 1, 2) (additional citations omitted). When determining legislative intent, "we assume no part of its statutory scheme be rendered mere surplusage." Double Diamond Const. v. Farmers Co-op. Elevator Ass'n of Beresford, 2003 SD 9, ¶7, 656 NW2d 744, 746. Furthermore, "general statutes must yield to specific statutes if they are not consistent." Wildeboer v. South Dakota Junior Chamber of Commerce, Inc., 1997 SD 33, ¶24, 561 NW2d 666 (citing U.S. Lumber, Inc. v. Fisher, 523 NW2d 87, 91 (SD1994)) (additional citations omitted).

[¶15.] The Department cited many reasons for denying Huber a license. Not only had he blacked out while driving on more than one occasion, but he killed two pedestrians during one of these episodes. While Huber points to his doctors' medical statements that they believe he should be allowed to drive without restriction, the same doctors agree that there is no guarantee that a future loss of consciousness will not occur. Moreover, Dr. Freeman stated Huber's cough syncope would be greatly reduced if Huber quit smoking completely. However, there was no medical testimony to support Huber's claim he had quit smoking. The Department also emphasized Huber had been cited for several accidents and other traffic violations, many of which occurred while he was not licensed to drive.

[¶16.] There is no requirement the Department rely solely on one statute or one set of facts in its decision to deny a license. The legislature plainly stated "the Department . . . shall not issue any license . . . when [it] has good cause to believe that the operation of a motor vehicle on the highways by such person would be inimical to public safety or welfare." SDCL 32-12-35. Contrary to Huber's

argument, there is no reason the Department has to rely solely on one fact and one statute in its determination. Under SDCL 32-12-35, the Department can look at all the facts and as long as it has "good cause to believe" the person's driving "would be inimical to public safety and welfare," they cannot grant a license. The Department's findings of facts are not clearly erroneous. The decision made by the Department to deny Huber a license does not violate SDCL 1-26-36 and we affirm.

[¶17.] **2. Whether the final decision was issued using improper procedure.**

[¶18.] Huber alleges that the Department violated its administrative procedures when it issued the final decision denying his license. Huber claims SDCL 1-26-24 was violated, which provides:

> When in a contested case a majority of the officials of the agency who are to render the final decision have not heard the case or read the record, the decision, if adverse to a party to the proceeding other than the agency itself, shall not be made until a tentative or proposed decision is served upon the parties, and an opportunity is afforded to each party adversely affected to file exceptions and present briefs and oral arguments to the officials who are to render the decision. The tentative or proposed decision shall contain a statement of the reasons therefor and findings of fact on each issue and conclusions of law necessary to the proposed decision, prepared by the person who conducted the hearing or one who has read the record. The parties by written stipulation may waive compliance with this section.

Huber claims the Department violated SDCL 1-26-24 because there is no evidence Secretary Dravland actually read the record.

[¶19.] Contrary to Huber's claims, the final decision issued by the Department contains a clear statement by Secretary Dravland that he reviewed the record and proposed decision prior to issuing the final decision. While Huber

contends that this "boilerplate" language is insufficient, it does provide evidence that the Secretary read the record and that the procedural requirements of SDCL 1-26-24 were followed. Huber has only made broad allegations to support his contention, but has not pointed to any evidence to demonstrate the circuit court's finding that Secretary Dravland did read the record was clearly erroneous. Since the record reflects that Secretary Dravland did read the record, SDCL 1-26-24's procedures were not violated.

[¶20.] **3. Whether the circuit court abused its discretion by denying Huber's request for a hearing.**

[¶21.] Huber claims the circuit court abused its discretion when it denied his request for a hearing. Huber claims that the circuit court should have conducted a hearing in order to admit additional evidence. The Department contends that Huber did not request the opportunity to present additional evidence, and the failure to do so precludes determining this issue on appeal.

[¶22.] The decision to grant or deny oral argument is discretionary. *See* SDCL 1-26-35. "The term 'abuse of discretion' refers to a discretion exercised to an end or purpose not justified by, and clearly against, reason and evidence." Dacy v. Gors, 471 NW2d 576, 580 (SD 1991) (additional citations omitted). The standard for reviewing abuse of discretion is "whether we believe a judicial mind, in view of the law and the circumstances, could reasonably have reached that conclusion." *Id.* The circuit court already determined that Secretary Dravland read the record, SDCL 1-26-24 had been followed and "no reason exits to take additional evidence as

provided [ ] in SDCL 1-26-35."[6]  In order to find the circuit court abused its discretion, we would have to believe a "judicial mind . . . could [not] reasonably" denied a hearing.  *See id.*

[¶23.]	The record indicates Huber asked for oral argument, but did not ask the circuit court for the opportunity to present additional evidence.  As we have noted, failure to ask the court's permission to present additional evidence precludes our consideration of the matter.  Lee v. South Dakota Bd. of Pardons and Paroles, 2005 SD 103, ¶10, 705 NW2d 609, 612 (citing Weber v. South Dakota Dept. of Labor, 323 NW2d 117, 120 (SD 1982)).  For these reasons, there is no showing the circuit court abused his discretion.

[¶24.]	We affirm.

[¶25.]	GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.

---

6.	SDCL 1-26-35 provides:
	The review shall be conducted by the court without a jury and shall be confined to the record.  A trial de novo may not be granted unless otherwise authorized by law, but in cases of alleged irregularities in procedure before the agency, not shown in the record, proof thereon may be taken in the court.  The court, upon request, may hear oral argument.